ELLIS, Judge.
This is a suit by John H. Lanier and Elizabeth Williams Lanier, father and mother respectively of Preston Luke La-nier who was killed in an automobile accident on April 18, 1947 at approximately 12:30 P.M., as the result of a collision between the log truck which he was driving and a log truck belonging to the defendant, Hillery Simmons, and being driven by one Dermont Lambert, and a pick-up truck owned by the defendant, A. R. Bloss-man, Co., being driven by A. R. Tweedy who at the time was the Tangipahoa Parish manager for the Blossman Company.
Plaintiff charges the defendant with the following negligence:
“a. In attempting to pass a parked vehicle without ascertaining whether or not safe passage could be negotiated.
“b. In failing to accord converging traffic its proper side of the highway.
“c. In pulling out in front of converging traffic.
“d. In not having their vehicles under control sufficiently to enable them to stop behind parked traffic to enable converging traffic to safely pass.
“e. In failing to sound horn or other warning in passing traffic.
“f. That the first and second named defendants were negligent in attempting to pass an automobile on the upgrade of a hill without ascertaining that said passage could be safely made.
******
“And, in the alternative only your petitioners show that if their son could be charged with negligence then and in that event that he was presented with a sudden emergency by traffic pulling into his traffic lane and that he chose the safest course and negligence cannot be imputed to him for electing between hazards and your petitioners further show in the alternative that in the event any negligence could be chargeable to their deceased son or imputable to them, then and in that event only that such negligence was the remote cause of the accident and the negligence proximately causing the accident and resulting death of petitioners’ son was the acts of negligence of both first and second named defendants in pulling into the eastern bound traffic lane or that lane being traversed by petitioners’ son, and your petitioners further show in the alternative that in the event their son was negligent in any respect then and in that event only *181 that the first and second named defendants had the last clear chance of avoiding the accident and that second and third named defendants had discovered the peril of his automobile in front of them and said first and second named defendants irrespective of this discovered peril proceeded to attempt to pass the same on the upgrade of a hill with traffic converging upon them, consisting of truck operated by decedent fully laden with logs; * *
The Blossman Company, Inc. and its insurer, both defendants, specifically denied any act of negligence as charged in the plaintiffs’ petition and in the alternative plead contributory negligence on the part of the deceased son and driver of the log truck, Preston Lanier, in driving the truck at a fast and excessive rate of speed and not having it under proper care and control and in not maintaining the proper lookout.
The defendant Simmons specifically denied the acts of negligence charged to the driver of his truck by the plaintiff.
The Liberty Mutual Insurance Company filed a petition of intervention claiming the amount paid by it in a lump sum settlement of the compensation claim on behalf of young Lanier.
The case was duly tried before Judge Nathan B. Tycer who became ill and was retired prior to a decision in the matter. It was then submitted to Judge Warren W. Cornish upon the transcript of testimony and briefs and judgment was rendered in favor of each parent, plaintiffs herein, in the sum of $5,000 with interest at 5% per annum from date of judicial demand until paid. Judgment was further rendered in favor of the intervenor for the reimbursement of $2805 paid by it in settlement of the compensation claim of young Lanier.
It must be remembered that the Judge of the Lower Court who had tried the case and heard and observed the witnesses is not the Judge who rendered the decision. Therefore, we are in equally the same position as the Judge of the Lower Court who rendered judgment in this matter. We, as well as the Lower Court, must take a cold record and try to arrive at a fair and just conclusion in the matter.
From this judgment A. R. Blossman Co. Inc. and its insurer, Hartford Accident and Indemnity Company, have appealed. There was no appeal by Hillary Simmons.
Plaintiffs apparently base their prayer for an affirmance of the judgment of the Lower Court upon two grounds:
1. That the front left wheel of the Simmons truck at the time of the accident was a short distance over the center line of the road and that the Blossman truck was a greater distance over the center line and that the log truck being driven by the deceased, Preston Lanier, did not have a sufficient distance remaining in his lane of travel to avoid the collision ;
2. That an emergency was created by Simmons and Blossman in pulling out into the south or east bound lane of traffic in order to pass a parked vehicle in the north or west bound lane of traffic at a time when the log truck driven by Preston La-nier was approaching.
As a proper decision in this case is dependent upon the facts it is necessary that they be reviewed somewhat in detail.
It is shown that this collision occurred near the driveway leading to the home of one Bridges and according to the testimony Preston Lanier was driving a loaded log truck in an easterly direction and had reached the crest of a slight hill and was coming down the incline when the collision occurred. It is shown by the testimony of a civil engineer that from the crest of the slope to the driveway of the Bridges’ home was approximately 900 feet and from the crest of the hill looking east to a curve in the road was approximately 1500 or 1600 feet. It is also shown that there was an average incline of three feet per hundred feet going down this so-called hill. It is further shown by the civil engineer that the width of this gravel road in front of the Bridges’ residence where the collision *182 took place was a little more than 20 feet wide from ditch to ditch.
It is shown by the testimony that just prior to the collision the truck of the defendant Simmons was being- driven by Lambert in a westerly direction on the gravel highway leading from the town of Tangipahoa, and was being followed by a pick-up truck belonging to the defendant, A. R. Blossman, Co., and driven by its manager Tweedy, and coming from the west were two loaded log trucks, both going to the same mill. Parked in the north or west bound lane of traffic near the driveway of the Bridges’ home was a Ford car. The driver of the Simmons log truck proceeding in a westerly direction came up behind this parked Ford truck . and saw the first loaded log truck being driven by one Jones approaching from the west and he stopped his truck. The Blossman truck then came up behind the parked Simmons truck and stopped. The loaded log truck driven by Jones proceeded to pass in the south or east bound traffic lane. It is from this point that the testimony is 'in conflict.
Plaintiff contends that as. soon as the Jones log truck had passed, both the Simmons and Blossman tracks started to pull out into the south traffic lane, causing Lanier to strike both trucks.
It is the contention of the defendants that they were on their proper side of the road and the loaded log truck driven by Lanier began to wobble or zigzag in the highway and he evidently lost control of the truck, striking both the motor vehicles of Simmons and Blossman. It is undisputed that after the vehicles collided, La-nier’s track went down the road some 90 feet where it crossed and went off the road on the north side in the ditch and struck a tree, resulting in Lanier’s death.
There is no dispute as to where the Simmons track was after the accident, that is, on its own side of the road, but it is contended that it had been over the center line a foot to a foot and a half and was knocked back on its own side of the road by the force of the collision. There is no dispute that the Blossman truck after the collision was headed in a northeasterly direction with its front end down in the-ditch and its rear end up on the road. As. to whether it was knocked to the left or the right, there is a direct conflict between the plaintiffs and defendants. The plaintiffs contend that the Blossman truck was. parked at an angle with its left front end protruding further out into Lanier’s south or east bound traffic lane and that the Lanier track struck it on the left front grill and fender and turned it to the right in a complete circle, whereas the defendants contend that the Blossman truck was parked on its side of the highway with its left portion somewhat nearer the center line and that Lanier lost control of his loaded log truck and it came zigzagging and wobbling down the incline, first striking the Simmons truck and then struck the Bloss-man truck on the left front fender and grill, knocking it to the left in a half circle.
The question presented, therefore, is whether the Simmons and Blossman tracks obstructed Lanier’s traffic lane by having a portion of their trucks across the center line.
The plaintiffs offered the testimony of Deputy Sheriff Gill who testified that he arrived at the scene of the accident approximately 45 minutes after it occurred and that, together with State Highway Patrolman Anderson, he investigated the collision by inspecting the scene and location of the vehicles. Together they made a report which was filled out by Patrolman Anderson and consists of three pages which is filed in the record. On this report the Lanier vehicle is #1, the Simmons empty log truck is #2, and the Blossman pick-up truck is #3. The report, under the heading “Other Violations” in the handwriting of Trooper Anderson states: “#1 from physical evidence as seen was driving too fast for conditions,” The report further shows that Vehicle #2, the Simmons truck, sustained damage to the “left front fender and tire and left rear tire.” Vehicle #3, being the Blossman truck, sustained damage to the “left front.” The diagram of the positions of Vehicles #2 and #3' as *183 shown on this report places a parked car near the shoulder on the north traffic lane. Behind this car, apparently in a position to pass the parked car was Vehicle #2, the Simmons truck, and to the rear, behind the Simmons truck, is shown the Blossman truck. Both the Simmons and Blossman trucks were on their proper side of the road in the diagram as prepared right after the accident by Trooper Anderson and Deputy Sheriff Gill. This diagram further shows the Blossman truck as being knocked to its left in a half circle so that the front end was facing slightly east of north.
Under the heading of “Describe What Happened” we find the following in this report:
“Veh. #1 traveling E on Spring Creek road meeting #2 followed by #3 traveling W. A car was parked in #2’s lane and attempted to pass parked car but saw apprpaching trk & reversed gear and came to a stop in rear of parked car. #2 and 3 was on or near center of Roadway when veh attempted to pass parked car #1 applied brakes & lost control of veh. #1 hitting #2 & 3 causing #3 to turn half round & into ditch #1 traveled approx. 18 ft. & ran into ditch & logs shifted on load causing death of subject.”
This suit was filed on December 23, 1947 and tried on June 2, June, 27 and November 14, 1949. On the trial Deputy Gill produced a diagram which, when reading his testimony, one would think was made shortly after the accident for he testified that he drew the diagram of the scene of the accident from the physical facts that he'found when he got there. When cross-examined as to when he drew this diagram he answered: “Sometime later”, and was asked: “How much later?”, and he answered: “Good bit.” Counsel, not being satisfied with this answer, asked whether it was one day, two weeks, or three months and his answer was, “Several months.” His testimony clearly indicates that he intended to give the impression that the diagram was drawn a reasonably short time after the accident. When Trooper Anderson was questioned about this diagram the questions and answers were as follows:
“Q. We are trying to fix the time when you and Mr. Gill got together. A. We got together when it was supposed to be tried before.
“Q. About a month ago?. A. I don’t know. It was the last time the witnesses got together.
“Q. It was about March 31, 1948, that it was set for trial before. In other words, it was nearly two years after this accident occurred that you and Mr. Gill got together and you made up your mind that you made a mistake on the report ? A. I had no other occasion to bring it up.”
The diagram which Gill and Anderson prepared some two years after the accident shows the Simmons truck and the Blossman truck as being over the center line in the traffic lane of the Lanier log truck. This is clearly their idea of where these trucks were at the moment of the collision and, of course, both of them were many miles away from the scene at that time. Further, both Gill and Anderson testified that the Blossman truck was knocked completely around to its right rather than as shown on the diagram and contrary to the testimony of Tweedy who was sitting in the truck at the time it was struck, and contrary to their own report which they made at the scene shortly after the occurence. Both base their testimony as to the position of the Blossman and Simmons trucks at the time of the accident on the tracks which they say they traced from the Lanier truck back to the point of impact.
The testimony shows that the Simmons truck first stopped in order to let a log truck driven by Jones pass, and Blossman stopped behind the Simmons truck. The Jones log truck passed safely by in the south traffic lane. Neither Gill nor Anderson mentioned the tracks made by this truck as distinguished from the tracks they contended were made by the Lanier truck. The road on which the accident *184 occurred was graveled and very dusty and dry at the time. Naturally the highway would be somewhat scuffed up at the point the Lanier truck struck the Simmons and Blossman trucks, but as to any unusual marks or disturbances on the south side of the center line of the road, it would be almost impossible for Gill or Anderson or anyone else to say that such marks were not made by the Lanier truck rather than the Simmons and Blossman trucks, as both these trucks were knocked away from the center line.
The report which Gill and Anderson made immediately after the accident must be given greater weight than testimony contradictory thereto some two years after the accident. As to whether Gill’s testimony immediately after the wreck should be accepted or that of some two years afterward, we will let his own testimony given on the trial speak for itself. In testifying as to when the accident happened and whether a report was in his handwriting, he stated:
“No. I’ll be frank. I don’t know if it was in the afternoon or in the morning. It had been so long and we worked wrecks every week and I was called to the scene. I think I was there about 45 minutes after it happened. They had just removed Mr. Lanier.”
As to Gill and Anderson’s testimony we must accept their findings immediately after the accident at the scene rather than testimony two years later as to what they thought had happened at the time, materially different from the written report.
It might be well to state that Anderson did testify that he only wished to change the report in respect to the Blossman truck being knocked all the way around in a circle to its right rather than half around to its left as shown in the report. He stated that the rest of the report stood as far as he was concerned.
These accident reports are made by skilled investigators such as sheriffs, deputy sheriffs and state troopers. Those men are specially trained to investigate automobile accidents and are specially trained to look for physical facts and evidence that might reflect as to who was at fault in the accident. In this case the accident report as found in the record was made up by the deputy sheriff and the trooper just a short time after the accident and we have every reason in the world to believe what they stated in that report to be a true reflection as to what they found.
These two officers predicate this change of testimony from their report due to the fact that one was giving information and the other was writing it down and that one or the other got mixed up on east or west. They further predicate this change of this testimony on the physical findings which they claim they discovered at the scene of the accident but that the report is absolutely silent of and that is a fact that when the Blossman truck was turned counterclockwise to the left, that it made tracks in the gravel road to indicate the way it had turned. It appears to us that if they had found these tracks or marks on the gravel road which they claim they found at the time they investigated the accident, that being such an important factor, that they would have indicated that fact on their report but they did not do so. Another physical factor which appears to be important is the fact that the Blossman truck according to their testimony was hit on the left front grill and fender by a tractor and log trailer of the plaintiff and that the entire right side as well as right front of the Blossman truck was not damaged at all. If the Blossman truck had been hit by this large log trailer on the left front and turned completely around counterclockwise, the right front as well as the right side of the Blossman truck would have been likewise damaged in the impact, but according to the testimony the right front and right side of the Blossman truck was not damaged which further indicates and proves that the Blossman truck was hit on the left front by this log truck and spun to the right or clockwise and not as stated by the two officers in their testimony. It may be well to remember that the Blossman truck, even though we are referring to it as though it were a truck, was only a little *185 pick-up truck which is a very light vehicle in comparison to a log truck and trailer.
The plaintiff offered the testimony of John Jones who was driving a loaded log truck on the same road preceding the Lanier truck. He testified that his truck was running hot and that he had asked Lanier to follow him in to the mill. As he approached he saw the Model A. Ford automobile parked on the side of the road and just beforfe he passed, the Simmons truck pulled up and stopped 'behind this parked car, and while he was passing the two vehicles the Blossman truck pulled in and he stated “cut out.” He states that the Blossman truck was being operated at about 60 miles an hour. This witness stated that the Blossman truck “pulled up and got out into the middle of the road toward me.” Of course, this is impossible as he would have had a wreck himself due to the width of the road and his truck. Fie testified that he passed on by and looked in his mirror and the last he saw of the Blossman truck “he was pulling out behind the Simmons truck,” and “pulling out in front of Preston.” This witness testified that the dust came between him and the Blossman truck and finally restricted his vision. He did not see Preston Lanier coming behind him nor hear the wreck, and in our opinion this is vital to his testimony. If he was looking in his rear view mirror, there was a distance of 900 feet from where Simmons’ truck and Blossman’s truck were parked to the top of the incline, and he was bound to have seen the Lanier truck unless the dust obscured his vision, which he did not say. Further, Simmons’ driver testified that the Lanier, truck was so close behind the Jones truck that he only had time to start to pull out to pass the parked car when he saw the Lanier truck coming down the incline and he realized that he would not have time to pass so he stopped. It is further shown that the Simmons’ truck rolled back until the coupling pole struck the Lanier truck which, of course, would place it further toward the north than where it was when it stopped to allow Lanier to pass. It is inconceivable that the driver of the Simmons empty log truck would stop his truck in the Lanier lane of traffic under the conditions or that the driver of the Blossman truck would attempt to pass the Simmons truck while it was attempting to pass the parked automobile. It is Lambert’s testimony that he was driving the Simmons truck, that he pulled up behind the parked Ford in order to allow Jones to pass, that he noticed the Bloss-man truck drive up behind him and as he moved up to go around the parked car he saw the Lanier log truck coming toward him so he stopped in order to let it pass. He did not see or notice the Blossman truck until after the accident, therefore, he does not know where, it was at the time of the accident. He only knows where his truck was and it is his positive testimony that he was on his side of the line, and that as the Lanier truck approached him he saw it start to zigzag or wobble as if it was out of control. It-continued to do this and struck the left front wheel and fender of this truck, continued on and struck the Blossman truck.
Tweedy, driver of the Blossman truck, testified that he pulled up behind the Simmons truck and did not notice the Jones truck pass, but that he saw' the Lanier truck coming down the hill in a wobbling or zigzagging fashion and saw it strike the Simmons truck and it struck the left front fender and grill of his truck, knocking it around to -its right in a half circle. It is the testimony of both Lambert and Tweedy that they were on their side of the road and if the Lanier truck had not gotten out of control it could have passed as did the Jones truck.
Lambert and Tweedy were the only living witnesses to the actual accident and their testimony is corroborated by the report which Anderson and Gill first made, and is entitled to greater weight than the testimony of Anderson & Gill which differed with the report.
The driver of the Blossman pickup truck states that when he stopped in the back of the Simmons, truck that his motor died and that he never -did start his motor, and for that reason we believe that when he stopped, his truck did not move again *186 until after the impact. It must be remembered also that the highway on which this accident occurred is a gravel road approximately 20 feet wide and that from the crest of the so-called hill which is west to the scene of the accident, is approximately 800 to 900 feet to the place where the accident occurred and that the highway is straight for a distance of approximately 1,600 to 1,800 feet and that the collision took place approximately in the center of these two points. This is not a hill in the true sense but is only a slope of a three per cent grade. The Jones logging truck which was traveling ahead of plaintiff’s truck passed these two standing vehicles without any trouble at a time when plaintiff’s truck was just about coming over the crest of the so-called hill. It may be possible that the Simmons truck might have moved because there is some testimony in the record that it rolled back and bumped into the Blossman truck before the impact. If that is true then there would be approximately the same clearance in the road as when the Jones truck passed but the testimony in the record indicates that the plaintiff’s truck started zigzagging or appeared out of control when it was coming down the road. The evidence tends to show that the plaintiff’s truck was traveling at an excessive rate of speed with a load of logs and it might be due to that fact that plaintiff’s truck went out of control due to the excessive speed and heavy load on the down grade and then bumped into the Simmons and Blossman trucks. The speed of the plaintiff’s truck is indicated further in that after striking these two trucks, plaintiff’s truck proceeded down the highway and according to the report as found in the record it ended up approximately ninety feet in the back of the Blossman truck running into a tree and causing the fatal accident.
Taking into consideration the width of the type of trucks involved in this accident, that is particularly the plaintiff’s vehicle, and the Simmons truck which were identical, insofar as the size and the width of the road were concerned, there would not be too much extra space between the trucks as they met on the highway. For that reason it would appear that if a truck was stationary and one is moving, that the driver of the moving vehicle should have his truck under such control that he can safely pass in the space provided. In this case it appears that the plaintiff’s truck was coming at a very fast rate of speed and out of control and for that reason we believe that the proximate cause of the accident was the negligence of the driver of the loaded log truck, Preston Lanier. Furthermore, we do not believe that the plaintiffs in this case have proven their case by the preponderance of the evidence under the circumstances as prevails here due to the change of testimony of the deputy sheriff and the state trooper.
There was no emergency created by Lambert or Tweedy. As to why Lanier’s truck went out of control can not be determined from the evidence in this case but if the Simmons and Blossman trucks were on their side of the highway, which the plaintiff has failed to show was not a fact, then the collision was not due to any act of negligence on the part of either, but apparently due to the negligence of the deceased, Preston Lanier.
For the above and foregoing reasons, it is ordered that the judgment of the District Court be reversed and plaintiffs’ suit dismissed at their cost.