MOISE, Justice.
Plaintiffs, John H. Lanier and Elizabeth Williams Lanier, sued
1. Hillary Simmons;
2. A. R. Blossman Company, Inc.; and
3. Hartford Accident & Indemnity Company, the insurer of A. R. Blossman Company, Inc.;
for damages resulting from the death of their minor son, Preston Luke Lanier, in an accident on April 18, 1947.
Liberty Mutual Insurance Company, workman’s compensation insurer of decedent’s employer, Clemons Brothers Lumber Company, intervened for the recovery of compensation benefits paid, funeral expenses, court costs, etc.
Trial on the merits resulted in a judgment in favor of the plaintiffs and against the defendants, in solido, for the sum of $10,000. The judgment further provided that the intervenor be paid the sum of $2,805, with preference and priority, out of the sum of $10,000 awarded to petitioners — petitioners, John H. Lanier and Elizabeth Williams Lanier, to receive the residue of $10,000 after the payment of $2,805 to the intervenor, Liberty Mutual Insurance Company.
From that judgment A. R. Blossman Company, Inc. and Hartford Accident & Indemnity Company perfected an appeal to the Court of Appeal for the First Circuit. Hillary Simmons evidently acquiesced in the judgment by not taking an appeal, and he is, therefore, not before this Court.
By a divided court, the Honorable Court of Appeal for the First Circuit dismissed plaintiffs’ suit on grounds of contributory negligence. Judge Tate dissented.
Writs were taken to this Court and granted, and the matter is now before us for review.
The facts are that at the time of the accident the decedent, Preston Luke Lanier, seventeen years of age, was employed by Clemons Bros. Lumber Company; that around noontime on April 18, 1947, said *739 Lanier was driving a heavily loaded log truck trailer eastward toward Tangipahoa on the gravelled Spring Creek Road, which is approximately 18 to 20 feet wide. He was following a log truck driven by a fellow employee, John R. Jones, who was having motor trouble.
The evidence shows that the accident occurred on the incline of a hill, some 900 feet from its crest, in front of the home of one Doyle Bridges; that Bridges’ Ford truck was parked in front of his home in a westerly direction on .the northern side of the highway; that Just prior to the collision, Hillary Simmons’. truck, driven by Dermont Lambert, and a truck of the A. R. Blossman Co., Inc., driven by A. R. Tweedy, stopped behind Bridges’ car to permit the log truck driven by Jones to pass. There was sufficient room for Jones to pass, and we hold that what one man has done another can do if the circumstances are the same.
The driver of the Simmons’ truck then pulled out into the highway to pass Bridges’ parked car. On seeing Lanier’s truck coming over the crest of the hill he tried to stop or park his truck in his own lane of traffic, but he was not successful. ,His truck rolled backward into the Blossman truck — for what reason the evidence does not show.
Jones swore that after he. passed the three parked vehicles, he saw. (from his mirror) the Blossman truck cross over the center line of the gravel road.
Descending the hill in his lane of traffic, Lanier was confronted with the Simmons and Blossman tracks obstructing his lane of traffic, which created a sudden emergency. He struck the Simmons truck;, went over to the Blossman truck, striking it with considerable force, and then continued on into the ditch on the northern side of the road. The logs on the truck shifted and Lanier was instantly killed. :
When confronted with this sudden emergency, Lanier could not go to his right, because he was only 18 to 20 inches from a ditch. He is not here to testify; we can only judge from the circumstances. We look at the emergency which surrounded the decedent’s actions, and, then we sound his heart by the plummets which w.e apply to our own. The physical facts are that at the point of impact, splintered glass was in decedent’s lane of traffic.
State Trooper Anderson made the following report after the investigation of the accident:
“Veh No. 1 Traveling E on Spring Creek road meeting No. 2 followed by No. 3 traveling W. A car was parked in No. 2’s Lane and attempted to pass parked car but saw approaching trk. and reversed gear and came to a stop in rear of parked car. Nos. 2 and 3 was on or near center of Roadway when veh. attempted to pass parked car. No. 1 applied brakes and lost control of Veh. No. 1 hitting Nos. 2 and 3 causing No. 3 to turn half *741 Round & into ditch. No. 1 trailed approx. 18 ft and ran into ditch and logs shifted on load causing death of subject.”
Plaintiffs allege that the death of their son was caused and occasioned by the following acts of defendants:
1. In attempting to pass a parked vehicle without ascertaining whether or not safe passage could be negotiated.
2. In failing to accord converging traffic its proper side of the highway.
3. In pulling out in front of converging traffic.
4. In not having their vehicles under control sufficiently to enable them to stop behind parked traffic to enable converging traffic to safely pass.
5. In failing to sound horn or other warning in passing traffic.
6. That the first and second named-defendants were negligent in attempting to pass an automobile on the upgrade of a hill without ascertaining that said passage could be safely made.
To the facts we must now apply the law.
LSA — Revised Statutes 32:233, and especially Section “C” thereof, provides as follows:
“The driver of a vehicle shall not drive to the left side of the center line of the highway in overtaking and passing another vehicle traveling in the same direction, unless such left side is clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety. Whenever an accident occurs under such circumstances, the responsibility therefor shall rest prima facie upon the driver of the vehicle doing the overtaking or passing.”
The case of Teche Lines, Inc., v. Gorum, 202 La. 993, 13 So.2d 291, 293, under facts strikingly similar to the case at bar, holds:
“Under Rule 7(c) of Section 3 of Act No. 21 of 1932, the prima facie responsibility for accidents occurring when the driver of a vehicle crosses the center line of the highway in overtaking and passing another vehicle where the left side is not ‘clearly visible and free from oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in perfect safety’ is placed upon the driver' of such overtaking or passing vehicle. Furthermore, under the universal rule of law, ‘An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, *743 even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency.’ 5 Am.Jur. 600, Sec. 171. * * *”
In his reasons for judgment, the district judge made these pointed observations :
“This Court is familiar with the location of the accident and witnesses and believes that the plaintiffs have established their case by a preponderance of evidence and believes that both the driver of the Simmons truck and the Blossman truck violated both Rules 6 and 7 of the Highway Regulatory Act 286 of 1938 as amended. Likewise the Court does not feel that the defendants have rebutted the prima facie evidence of responsibility imposed upon drivers passing vehicles on hills.
“The Court is further of the opinion that here lies the cause of the-swaying of the log track and the apparent losing of control of same after striking the Simmons truck because the defendants themselves created an emergency by attempting to pass on an incline a parked automobile and then attempting to pull back out of the path of the approaching log truck.”
In its judgment dismissing plaintiffs’ suit, the divided Court of Appeal held [79 So.2d 186]:
“There was no emergency created by Lambert or Tweedy. As to why Lanier’s truck went out of control can not be determined from the evidence in this case but if the Simmons and Blossman trucks were on their side of the highway, which the plaintiff has failed to show was not a fact, then the collision was not due to any act of negligence on the part of either, but apparently due to the negligence of the deceased, Preston Lanier.” (Italics ours.)
Plaintiffs contend that the decree of the majority of the Court of Appeal is contrary to the decision of the Second Circuit Court of Appeal in the case of Hardy v. National Mutual Casualty Co., 9 So.2d 346, the syllabus of which states:
“Where defendant’s automobile, in, overtaking and passing a slow-moving truck, collided with plaintiffs’ on-coming automobile at a point about 8 feet ahead of track and before regaining right side of highway, a presumption of responsibility of defendant was created by the statute prohibiting passing another vehicle where it cannot be done in safety. * * *
“Where defendant, in overtaking and passing a slow-moving truck, collided with plaintiffs’ on-coming automobile, defendant failed to meet burden of overcoming presumption of responsibility on part of overtaking vehicle, when collision occurred about 8 feet ahead of truck before defendant regained right side of highway and it *745 was not shown that plaintiffs’ automobile was traveling at an excessive rate of- speed.”
Judge Tate, in his able dissent, made the following pronouncement:
“ * * * the decision of the District Court is supported by the overwhelming preponderance of the sworn .evidence; and in arriving at a con- . trary result, we are substituting merely our own opinions for this sworn tes- . timony. We are further committing error of law in allowing a routine and perhaps unconsidered accident report greater weight than the sworn testimony at the trial of the police officers who prepared this same report.
“In an opinion ably summarizing the evidence, the District Court found that the defendants’ trucks going uphill had pulled out across the center of the highway to pass a car parked in their lane, and into the path of decedent’s log truck which had come over the crest of the hill. The Simmons’ truck attempted to back up, and the Blossman’s truck motor had stalled. The District Court concluded that the accident was caused by the defendant trucks’ negligence in attempting to pass the parked vehicle on the upgrade of a hill and in the face of opposing traffic, LSA-R.S. 32:233, and that if decedent lost control of his truck immediately prior to the accident, it was due to' the emergency cieated" by' the negligence of defendants’ trucks in being passing or stalled immediately in his path on his portion of this narrow gravelled road.”
Further in Judge Tate’s dissent, we find this:
“I do not believe it is within the province of this Court to substitute its opinion that tracks and physical evidence such as described by these five apparently disinterested witnesses could not have been made or discerned on the gravel road in question, for their sworn testimony that such tracks were there and discernible. This is to substitute mere speculation on our part for sworn testimony of witnesses— sworn testimony which is not seriously disputed by contrary evidence or even by searching cross-examination. To hold that such tracks could not possibly have been made by the desperate and perhaps terrorized application of brakes on this heavy log truck, does not appear to me to be so infallible an assumption as for us on the ’ strength thereof to characterize as coldblooded perjury the testimony of Trooper Anderson, Deputy Sheriff Gill, and Messrs. Bridges, McKnight, and Graves.
“This sworn testimony is not conjectural and positively places by sworn testimony the point of impact as over in decedent’s portion of highway. [Italics ours.]
*747 “The majority’s decision of decedent’s .contributory negligence is also based upon decedent’s proceeding at too great a rate of speed under the circumstances and not having his truck under control. This latter is based upon decedent’s truck swaying on the road at thé time óf the accident according to the testimony of Lambert, driver of defendant Simmons' truck. Lambert admits having pulled out to pass the parked truck after the first oncoming (the Jones) truck had passed, and was at the center of the road-and judged the Blossman truck was a little further out past his own truck starting around him in the path of oncoming vehicles (although under cross-examination by his codefendant’s counsel, he stated that this was based not on direct observation but the greater'impact received by the Blossman truck).” (Physical facts.)
The first and only thing to rely on is the truth, manifesting itself by the demonstrative physical facts and those that are proven by tire senses. These’ are the cornerstones ; these are the columns that nothing can move; these are the true and only foundation for belief. Beyond the truth that has been demonstrated is the horizon of the probable.
To our mind this record presents that the gross, negligence of the drivers of the Simmons and Blossman trucks in blocking decedent’s lane of traffic (where simple observation could have disclosed the danger of such action), without taking the precaution of any kind of signal to warn approaching traffic of the danger, was unquestionably the proximate cause of the accident.
For the reasons assigned, the writs are made peremptory; the judgment of the Court of Appeal for the First Circuit is reversed and set aside; and the judgment of the district court is reinstated — all costs to be paid by A. R. Blossman Company, Inc.' and Hartford Accident & Indemnity Company.
PONDER, J., recused.