215 So.2d 167 (1968)
David PERRY et al., Plaintiffs and Appellees,
v.
Willie HERRIN et al., Defendants and Appellants.
No. 2398.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
Rehearings Denied November 20, 1968.
Writs Granted January 20, 1969.
*168 Watson, Brittain & Murchison, by, Jack O. Brittain, Natchitoches, for defendant-appellant-appellee, State Farm.
Roy & Roy, by, Chris J. Roy, Marksville, for defendant-appellant-appellee, Herrin.
Stafford & Pitts, by, John L. Pitts, Alexandria; Norman L. Sisson, Louisiana Dept. of Highways, Baton Rouge, for Dept. of Highways, defendant-appellant-appellee.
Gold, Hall & Skye, by, James D. Davis, Alexandria, for plaintiff-appellee, Perry.
En banc on reargument.
CULPEPPER, Judge.
This case is consolidated for trial and appeal with Herrin v. Perry, et al., 215 So.2d 177, in which a separate decision is being rendered by us this date. Both suits arise out of a head-on collision between two pick-up trucks, one being driven by Willie Herrin and the other by Mrs. Luerine Perry, near a point where a sign repair truck of the Louisiana Department of Highways was parked on the highway.
In the present suit, Mrs. Luerine Perry and her husband, David Perry, individually and on behalf of their 20 month old daughter, who was a passenger in the Perry vehicle, named as defendants, (1) Willie Herrin, (2) his liability insurer, Southern Farm Bureau Casualty Insurance Company, (3) the Louisiana State Department of Highways,[1] and (4) Royal Indemnity Company, the liability insurer of the Louisiana State Department of Highways (whose coverage is limited to $20,000 per person and $100,000 per accident.)
In the companion suit, Willie Herrin has named as defendants: (1) David Perry, (2) the Louisiana State Department of Highways and (3) its insurer, Royal Indemnity Company.[2] In the alternative, *169 Herrin seeks to recover from his own insurer, Southern Farm Bureau Casualty Insurance Company, under the uninsured motorists clause, in the event the party defendant found responsible for this accident has no insurance. (Apparently Perry has no insurance.)
The district judge found the crew of the Highway Department truck negligent in obstructing the highway. He also held Herrin negligent in passing the highway truck at a time when the oncoming Perry vehicle was too close for safety. Mrs. Perry was found free of negligence. Accordingly, the Perrys were granted judgment against all of the defendants in the present suit, except the Department of Highways, which was dismissed on an exception of immunity. All defendants cast in the Perry suit appealed. The Perrys answered the appeal, seeking only an increase in the awards. The Perrys do not urge the dismissal of the Department of Highways was error. (Apparently because they think the Department's $20,000 insurance coverage is adequate for their claims.) Hence this issue is not before us in the Perry case.
Herrin's suit was dismissed after trial. He has appealed.
The scene of the accident is on Louisiana Highway No. 457, also known as Latanier Road, a two-way, two-lane, blacktopped secondary road, running generally north and south through a rural farm area. The asphalt pavement is 20 feet wide with shoulders on each side of about 5 feet. For at least ¾ of a mile south of the scene, the road is straight, but immediately north of the scene it curves gradually to the west and there is a curve sign on the east shoulder about 500 feet south of the curve. The speed limit is 60 miles per hour.
The accident occurred on March 14, 1966 at about 11:30 a. m. Rain had fallen earlier in the day and the pavement was wet, but it was only "misty" at the time of the collision.
A sign repair crew, 3 employees of the Department of Highways, had parked their truck, headed north, on the east side of the highway, about 6 feet north of the curve sign, which they intended to change to a larger size. A preponderance of the evidence shows that the left-hand wheels of the truck extended out into the northbound lane of traffic, partially obstructing it. A northbound vehicle had to go partially into the west lane of traffic to pass the truck.
The plaintiff, Willie Herrin, is the only eyewitness to the collision. Mrs. Perry could remember nothing about the accident. The 3 Highway Department employees were in the cab of their truck. They heard Herrin pass and heard the collision, but their windshield was fogged and they saw nothing.
Herrin's version of the accident is as follows: He had just left his dairy farm, located a short distance south of the scene of the accident, and was driving in a northerly direction at a speed of 40 to 45 miles per hour. He saw the Highway Department truck parked on the pavement about ¾ of a mile ahead. As he approached the truck, he slowed down and blew his horn as a precaution for any workmen who might be around the truck. Then he moved into the passing lane, observing for any oncoming traffic and for any workmen around the truck. When he had reached a point so close behind the parked truck that he was "committed to pass" he saw the Perry vehicle coming around the curve ahead.
Herrin says the Perry truck appeared to be "coming pretty fast". He accelerated, passed the Highway Department truck and returned to his own lane of travel. It appeared to Herrin that the Perry truck "got faster" and, as Mrs. Perry left the curve, she angled into Herrin's lane of traffic and struck him there.
The vehicles collided left front to left front. Neither truck moved far after the *170 impact. Herrin's vehicle went off head first into the ditch on the east of the highway. The Perry vehicle spun counter-clockwise and came to rest facing generally northeast in the west lane of traffic.
The first issue is the negligence of the Highway Department crew. The trial judge correctly found they had violated LSA-R.S. 32:141. They left their truck parked on the main traveled part of the highway for over 30 minutes, without any attempt to protect traffic, when it was practicable to park off the highway.[3]
The crew testified they stopped here to change the curve sign to a larger size. They did not park farther on the shoulder for fear of bogging down. They stayed in the parked truck for over 30 minutes because it was raining. Statements of other witnesses show that although it was "misty", there was not enough rain for anyone else to stop working or even to use their windshield wipers. About 114 steps south of the place where the highway truck was parked, there was a driveway on each side of the road where the truck could easily have parked entirely off the highway.
Furthermore, under the general rules of negligence, the parking of this truck on the main traveled portion of the highway, within about 500 feet of a curve, in wet weather, created a reasonably foreseeable risk of harm to other vehicles. We have no difficulty in finding that the Highway Department crew was negligent.
The Highway Department's negligence was clearly a legal cause of the accident. The truck was parked on the pavement in violation of a safety statute which seeks to protect against the very type of hazard which caused this collision. And, if the truck had not been thus illegally parked, the collision would not have occurred. Any subsequent or intervening negligence on the part of Mrs. Perry or Herrin, does not relieve the Department of liability for its own negligence.[4]
The next issue is the negligence of Willie Herrin. The initial inquiry here is whether the impact occurred in Herrin's lane of travel. The trial judge correctly found that it did. In addition to the uncontradicted testimony of Herrin, we have first the presence of certain gouge marks in the asphalt, made by the vehicles after the impact. Following the collision, the Herrin vehicle went into the ditch on the right hand side of the highway, leaving a gouge mark which started 7 feet 7 inches east of the center of the highway and ran in a northeasterly direction off the pavement. It is apparent that this gouge mark was caused by the left front of the Herrin vehicle which dropped to the asphalt.
After the impact the Perry vehicle spun counterclockwise and came to rest in the *171 west lane of traffic, facing generally in a northeasterly direction. The left front tire of the Perry truck blew out and, as the vehicle spun counterclockwise, the rim of the left front wheel made two gouge marks. The first started one foot east of the center of the highway and ran a distance of about 3½ feet in a north-westerly direction across the center line of the highway. A smaller gouge mark, 1 foot 4 inches long, is generally northwest of and in line with the first.
Thus, the testimony of Herrin, as corroborated by the gouge marks and the positions in which the vehicles came to rest after the impact, establishes by a clear preponderance of the evidence that the collision occurred in Herrin's lane of traffic. This being true, a prima facie case of negligence against Mrs. Perry is established. It is incumbent upon the Perrys to show by clear and convincing evidence that Mrs. Perry's presence in Herrin's lane of traffic was due to unexpected and unforeseen circumstances over which she had no control and that she did not in any way contribute to the mishap. Noland v. Liberty Mutual Insurance Company, 232 La. 569, 94 So.2d 671; Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Davis v. Roberts, La.App., 159 So.2d 511; Jones v. Continental Casualty Company of Chicago, Illinois, 246 La. 921, 169 So.2d 50; Daniel v. Reed, La.App., 137 So.2d 645.
The trial judge concluded that, considering the evidence as a whole, the cause of this accident was that Herrin "undertook his passing maneuver at a time when the approaching Perry truck was so close that a collision was inevitable. Resultingly, his negligence was a proximate cause of the accident." After carefully considering the physical characteristics of the highway, the distances involved, the speeds of the vehicles and other relevant circumstances, we are unable to agree that Herrin was negligent in passing the truck when Mrs. Perry was too close for safety.
The highway truck was parked about 6 feet north of the curve sign on the east side of the highway. The truck, we find, extended out into the northbound lane of traffic about 5 feet, in such a manner that a northbound vehicle had to go partially into the west lane in order to pass the truck. As stated above, Herrin testified that he had been traveling 40 to 45 miles per hour. As he approached the truck, he slowed down, blew his horn and moved into the passing lane, all the time watching for workmen around the truck and for any car which might be approaching from around the curve to the north. When he had reached a point so close to the rear of the truck that he was "committed to pass" he saw, for the first time, the Perry vehicle coming around the curve ahead. Herrin accelerated, passed the parked truck and returned to his own lane. Mrs. Perry appeared to accelerate as she came out of the curve and angled into Herrin's lane where the impact occurred. This is the uncontradicted testimony of the only eyewitness.
The crucial question is the distance between the Herrin and Perry vehicles at the time the drivers first saw or should have seen each other. The defendant insurer of the Highway Department introduced a photograph, taken opposite the curve sign, in the center of the highway. It shows a vehicle as it first becomes visible in the curve to the north. (As stated above, the curve turns gradually in a westerly direction.) The photographer testified that he measured a distance of 594 feet from the point he took the picture to the point in the curve where a vehicle first appears.
Herrin contends this "visibility distance" was not as great as 594 feet but instead was about 500 feet because: (1) the picture was taken in the center of the highway, whereas Herrin was in the west lane; (2) at the time the picture was taken on November 6, 1967, the bushes and grass on the west side of the curve were defoliated or cut back more than at the time of *172 the accident, which was in the spring, March 14, 1966. Furthermore, Herrin had not yet reached the curve sign when he first saw the Perry vehicle in the curve ahead. Hence the picture does not show Herrin's line of vision precisely. The trial judge considered all these factors and found this "visibility distance" to be about 500 feet. We think this is approximately correct. Thus Herrin could first see Mrs. Perry, and she could see him, when the Perry vehicle was 500 feet north of the curve sign.
The next question is the location of Herrin's vehicle when he first saw Mrs. Perry. Herrin says he saw the Perry vehicle as soon as it came into view in the curve. It is logical that he did because this was an obvious possible source of danger and he was proceeding cautiously and watching for oncoming traffic as he slowed down and passed the parked truck. Corroborating this is the testimony of the state trooper who investigated the accident. He said Mrs. Perry told him at the scene that she came around the curve and saw Herrin ahead in her lane of travel. Accepting Herrin's testimony that he had slowed to 40 miles per hour or less and was too close to stop safely behind the highway truck, when he first saw Mrs. Perry ahead, Herrin must have been about 100 feet from the curve sign when he first saw her. Adding this distance of 100 feet to the 500 feet from the curve sign to the Perry vehicle, it is reasonable to say the vehicles were about 600 feet apart when they came into view of each other.
Assuming that the Perry vehicle was traveling 45 miles per hour, as the Perrys contend, and that Herrin was traveling about 40 miles per hour, when the vehicles first came into view of each other, there was no unreasonable hazard, if they were then 600 feet apart. At this distance Herrin had ample time to accelerate and proceed the distance of 122 feet to the front end of the highway truck and thence into his right hand lane of traffic before Mrs. Perry reached him. He actually did so. The point of impact was in Herrin's lane 120 feet from the front end of the highway truck. Thus Herrin had safely passed and returned to his own lane before coming within 100 feet of the approaching Perry vehicle, as required by LSA-R.S. 32:75. We think Herrin acted reasonably and in compliance with highway traffic regulations. He was free of negligence.
The Highway Department and the Perrys contend that Herrin did not see the Perry vehicle as soon as it came into view 600 feet ahead. They say Herrin must not have seen the Perry truck until it was much closer to the highway truck. This argument is based on the fact that the point of impact was a measured distance of 142 feet north of the curve sign and 120 feet north of the front end of the highway truck. Since this is a crucial issue in the case, we quote from the brief of counsel for Mrs. Perry as follows:
"Mr. Herrin, however, testifies that when he first saw Mrs. Perry, he was on the side of the Highway Department truck and that she was just coming out of the curve. Remember that Mr. Herrin testified that he was traveling approximately 40 to 45 miles per hour. For Mrs. Perry to be in a position on the other side of the curve where Mr. Herrin could not have seen her and still get to the point of impact so that the wreck would occur, she would have to cover over 600 feet in the same amount of time that it took Mr. Herrin to cover approximately 150 to 200 feet. This means that Mrs. Perry would have to be traveling at a speed three times greater than Mr. Herrin, or in excess of 150 miles per hour, which is an impossibility."
We find at the outset that we cannot agree with certain statements of fact in the above quoted argument. First of all, Mr. Herrin did not testify that he was "on the side of the Highway Department *173 truck" when he first saw Mrs. Perry ahead. Herrin testified he was south of the highway truck but so close that he was committed to pass. As stated above, we think a fair estimate of this distance is 100 feet south of the curve sign. Furthermore, Mrs. Perry did not have to cover "over 600 feet". The point in the curve at which the Perry vehicle first became visible to Herrin was, as we have found above, about 500 feet north of the curve sign. The impact occurred 142 feet north of the curve sign. By subtraction of these 2 figures, we find that Mrs. Perry had to cover 358 feet from the curve to the point of impact. At 45 miles per hour, or 66.5 feet per second, (which is the speed the Perrys contend) this means that Mrs. Perry was 5.2 seconds away from the point of impact at the time she saw or should have seen Herrin starting to pass the highway truck. This was ample time and distance that no unreasonable hazard was created for her. She actually could have maintained this speed and stayed in her own lane and avoided the accident.
With regard to the distance traveled by Herrin, from the time he first saw the Perry vehicle until he reached the point of impact, we find that assuming he was 100 feet south of the curve sign and knowing the point of impact was 142 feet north of this sign, Herrin traveled a distance of 242 feet. We don't know Herrin's speed at the time he first saw the Perry vehicle. He said he had been traveling 40 to 45 miles per hour and had slowed down. After he saw the Perry vehicle, he accelerated, to go the distance of about 122 feet to the front of the parked truck and return to his own lane of travel. We can reasonably assume that Herrin's average speed in traversing the 242 feet to the point of impact was about 40 miles per hour, or 59 feet per second, which means that he traversed this distance in 4.1 seconds. This was a reasonably safe distance and time for him to pass around the highway truck and back into his own lane of travel.
Under our reasoning set out above, Mrs. Perry, at 45 miles per hour, took 5.2 seconds to reach the point of impact, whereas Herrin, at 40 miles per hour, took only 4.1 seconds. This discrepancy is reasonably explained by Herrin's testimony that when Mrs. Perry came around the curve she apparently became excited and actually accelerated which, of course, would have caused her to traverse the distance to the point of impact in less than 5.2 seconds. Also, of course, Mrs. Perry could have been traveling in excess of 45 miles per hour as she came around the curve. Herrin said she was "coming pretty fast."
It must be remembered that the impact occurred in Herrin's lane. The burden is on the Perrys to exculpate Mrs. Perry from fault. Unfortunately, Mrs. Perry cannot remember the accident. Herrin has presented a very reasonable and logical explanation under which he is free of negligence. The Perrys have not sustained their burden, set forth in the above cited authorities, of showing by clear and convincing evidence that Mrs. Perry was free of fault.
Of course, Mrs. Perry's negligence bars her own recovery and that of her husband for medical expense, but does not bar an award for injuries to her minor child, Nadine, who was a guest passenger. Although Mr. Perry answered the appeal and asked that the award to the child be increased from $1,500 to the sum of $7,500, we find no abuse of the great discretion of the trial court as to the amount of this award.
For the reasons assigned, the judgment appealed is reversed and set aside as to the awards in favor of Mr. Perry individually and in favor of Mrs. Perry. These claims are dismissed. The award of $1,500 in favor of Mr. Perry on behalf of the minor child, Nadine Perry, is reversed and dismissed as to the defendants, Willie Herrin and Southern Farm Bureau Casualty Insurance Company, but is affirmed as *174 to the defendant, Royal Indemnity Company. All costs in the lower court, as well as the costs of this appeal, are assessed equally against David Perry and Royal Indemnity Company.
Reversed in part, affirmed in part.
TATE and HOOD, JJ., concur in part, dissent in part and assign written reasons.
TATE, Judge (dissenting).
The writer respectfully dissents from this reversal of the trial court.
The trial court found that the accident resulted: (a) because of the highway department's negligent obstruction of the roadway during rainy weather, (b) when the defendant Herrin negligently attempted to pass this obstruction (c) at a time when the plaintiff Mrs. Perry was so close to truck (d) that Herrin's imprudent passing in her immediate path caused her to lose control of her car or to veer into his lane (into which he soon returned) to avoid the headon collision.
This version to me is supported by the preponderant facts, especially the circumstance that the accident occurred just 120 feet north of the truck. From this circumstance it seems to me that Mrs. Perry, approaching at about 40-45 mph, must have been about this distance (120') north of the point of accident as Mr. Herrin passed the truck's front, since both vehicles were going about the same speed. This indicates to me a passing maneuver at a time when it endangered oncoming traffic rightfully approaching in the passing lane. At any rate, I cannot find that the trial court committed manifest error in so finding; and an appellate court should not disturb factual determinations of the trier of fact in the absence of such error.
The accident happened in Herrin's lane, which does create a duty upon the other driver (Mrs. Perry) to exculpate herself from the slightest fault contributing to the accident. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139. However, it is also settled that the driver in the wrong lane may exculpate herself from negligence, and that her burden of doing so is satisfied if her swerve there results from an attempt to avoid a turn into her immediate path by an oncoming passing vehicle (which may indeed return to its lane before the impact). Lanier v. Hartford Accident & Indemnity Co., 228 La. 736, 84 So.2d 173; Duhon v. Cormier, La.App. 3 Cir., 152 So.2d 85. It seems to me that, of the three participants, Mrs. Perry is entirely innocent of fault. She was driving on her own side of the road, at a moderate speed, her little child with her. In her path suddenly appears the passing Herrin automobile, approaching her at (combining speeds of both vehicles) 80-90 miles per hour. Her braking efficiency is impaired, due to the wet pavement of the rainy day. Application of brakes may result in a loss of control (or perhaps it did) as dangerous as the hazard presented by the oncoming car blocking her lane. The other lane is likewise obstructed by the heavy highway truck unlawfully parked in it.
In my opinion, the trial court correctly found this lady to be an innocent victim of a traffic hazard primarily caused by the gross negligence of the highway department crew in obstructing the roadway. Perhaps Mr. Herrin's negligence might be excused by the necessity to pass this obstruction rather than stop on the rainy highway, but certainly Mrs. Perry should not be held negligent for losing control or swerving when suddenly faced with the terrifying appearance of a vehicle approaching headon towards her in her lane of the highway.
For these reasons, the writer respectfully dissents.
HOOD, Judge (dissenting).
I agree with that part of the majority opinion which holds that Mrs. Perry was negligent and that Herrin was free from *175 negligence. I disagree with the holding, however, that the operators of the highway truck were negligent.
The majority has held that the members of the Highway Department sign repair crew were negligent in parking their repair truck partially on the paved portion of the highway and that their negligence in that respect was a legal cause of the accident.
The highway crew was engaged in replacing a curve sign on the highway. The sign needed to be replaced, and it is the duty of the Highway Department to make these repairs. The truck being used by the crew was parked at that particular place, therefore, for a necessary and legal purpose.
The majority has suggested that the truck could have been parked in a private driveway 114 steps (or about 342 feet) south of the sign, and they have concluded that the crew was negligent in failing to do that instead of parking on the side of the highway. I cannot agree. In the first place, the consent of the owners of the private driveway would have to be obtained, if possible. Second, it would mean that the crew would have to carry the heavy metal signs and their tools a distance of more than 100 yards to and from the place where the work is to be done. And, third, the members of the highway crew testified that in making these repairs it is necessary for them to work off the back of the truck, and thus they must place the back of the truck as near the sign as possible.
LSA-R.S. 32:141 does not prohibit the parking of a truck on the highway under those conditions and as this truck was parked. The statute prohibits the parking on the paved portion of the highway only "when it is practicable to stop, park or so leave such vehicle off such part of said highway." In this instance, I think the evidence shows that it was not practicable to park the truck off the highway.
The Legislature, in adopting the above cited statute, obviously contemplated that in some instances vehicles may be parked on the paved portion of a highway, because it provides that "in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway." In this case an unobstructed width of the highway was left for free passage of vehicles. In fact, the vehicle which Herrin was driving easily and safely passed the highway truck while it was so parked. Also, the highway truck could be seen for much greater distances than are required by the statute. Herrin testified that he saw the highway truck at least three-fourths of a mile before he reached it, and counsel for plaintiffs in this suit argue that Mrs. Perry saw the truck as soon as she rounded the curve, when she was more than 500 feet from it. I think the majority erred, therefore, in holding that LSA-R.S. 32:141 was violated.
All parties concede that Herrin and Mrs. Perry saw the highway truck parked on the side of the road long before they got to it, so it is immaterial whether warning signals were given by the crew. I think it is material, however, to note the precautions which the crew took when they stopped the truck to perform this repair work. The highway truck was painted a bright color. Front and rear flashing signal lights were on while it was stopped, and the truck was parked as far off the paved portion of the highway as it was possible to get it. It had been in that position only about 30 minutes before the accident occurred. It was backed up to a regular highway curve sign, and the sign as well as the truck were easily visible to approaching motorists.
I think the highway crew took all of the precautions which could have been taken to protect other motorists while they *176 were performing the highway repair work which was required.
But, even if the highway crew had been negligent in some respect, the evidence shows that the parking of the truck in that location had absolutely nothing to do with the accident. The collision occurred 120 feet north of the parked truck. Herrin had already passed the highway truck, and he had returned to his proper lane of traffic. It was after Herrin had returned to his own lane of traffic that the Perry vehicle ran into him. The collision, of course, occurred in Herrin's lane.
Herrin was the only eye witness to the accident who testified as to how it occurred. Mrs. Perry could remember absolutely nothing about the accident, and the highway crewmen did not see it happen. Herrin's testimony is uncontradicted, therefore, to the effect that he passed the highway truck and got back into his own lane of traffic and that immediately after Mrs. Perry came around the curve ahead of him "she left the curve, she left it on a angle right inheaded toward my lane and that's where we had the wreck."
The accident would have occurred in exactly the same manner, therefore, if the highway truck had not been parked there at all. Herrin would have been in his own lane of traffic, and Mrs. Perry would have begun angling into Herrin's lane immediately after she rounded the curve at least 400 feet before she reached the point where the collision occurred. Even if the highway crew could be considered to be negligent for any reason, therefore, their negligence was not a proximate cause of the accident.
The majority correctly points out that since the accident occurred in Herrin's lane of traffic a presumption arises that Mrs. Perry was at fault, and the burden of proof rests on the Perrys to exculpate her from fault. The Perrys produced no proof at all tending to exculpate Mrs. Perry from fault, and my colleagues have held, correctly, I think, that plaintiffs have failed to meet the burden of proof which rested on them.
In determining that Mrs. Perry was negligent, the majority considered the distance she traveled after rounding the curve and before the accident occurred and the time within which that distance was covered. They then concluded that "This was ample time and distance that no unreasonable hazard was created for her. She actually could have maintained this speed and stayed in her own lane and avoided the accident." I agree with that conclusion, but that finding, in itself, shows that the sole proximate cause of the accident was Mrs. Perry's negligence, and that the position in which the highway truck had been parked did not create a hazard, and it did not cause or contribute to the accident.
I feel that neither Herrin nor the highway crew were negligent. However, if the finding of the majority is allowed to stand, that the highway crew was negligent in parking the truck in such a manner that it created a hazard, then I think the conclusion also must be reached that Herrin also was guilty of much greater negligence in attempting to pass the truck while it was in such a dangerous position. Herrin saw the truck long before he reached it. He was thoroughly familiar with the highway, since he lived within one mile of the point where the accident occurred. If there was any danger created by the parking of the truck, then Herrin should have been just as much aware of it as the highway crew should have been.
If the presence of vehicles on the highway ahead of Mrs. Perry caused her to angle into the wrong lane of traffic (and that is the only conceivable basis on which the parked highway truck could be connected with the accident), then it must have been the Herrin vehicle which upset her because that was the only one which was in her lane of traffic. If she became excited because of two vehicles side by side ahead of her, then it must have been the negligence of Herrin, as well as the highway crew, which caused her to lose control. *177 There, of course, is no evidence tending to show that either of these vehicles caused her to enter into the wrong lane of traffic.
I am unable to understand how the majority can reason that the highway crew was negligent and that Herrin was not. I think neither of them was negligent, but if the highway crew is to be held to be negligent then it seems to me that Herrin must be held to be negligent also.
For these reasons I concur in that part of the majority's decree which rejects the demands of Mr. Perry individually and of Mrs. Perry. I dissent from that part of the judgment which is in favor of Mr. Perry on behalf of his minor child, Nadine Perry, and against Royal Indemnity Company.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from denial of rehearing.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] The Department of Highways was originally named as a defendant but was dismissed on an exception of immunity, no legislative act authorizing suit having been adopted. LSA-La. Constitution, Article 3, Section 35.
[2] Through inadvertence, the Department of Highways did not file an exception of immunity in the trial court in the Herrin suit, but it has filed such an exception in this Court of Appeal. This presents one of the issues in the case.
[3] LSA-R.S. 32:141 reads in pertinent part as follows:

"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
"B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic."
[4] See Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962) and Bertrand v. Trunkline Gas Company, 149 So.2d 152 (La.App., 3rd Cir. 1963).