CULPEPPER, Judge.
For the reasons stated in the companion case of Perry et al. v. Herrin et al., 215 So. 2d 167, in which a separate decision has been rendered by us this date, we have concluded that the accident in question was caused by the combined negligence of the crew of the Department of Highways and of Mrs. Luerine Perry. Accordingly, Herrin is entitled to judgment for damages.
We will first discuss the amount of the award. Immediately after the accident on March 14, 1966, Herrin was taken by ambulance to the Baptist Hospital in Alexandria where Dr. Paul M. Davis, the treating physician, initially diagnosed his injuries as follows:
“Fracture of the left patella, complete, closed. Two — fracture of the medial— fracture with medial dislocation of the left hip, closed. Three — fracture right radius, closed. Four — fracture chip, open, right femur at the knee and five, he had multiple contusions and injuries to his chest.”
He was placed in traction and kept in the hospital for later surgery. On March 25, 1966 the left hip was opened, the fractured bones reduced and fixed with screws. On April 4, 1966 it was discovered that the forearm was not responding to treatment and a pin was implanted. On April 25, 1966 the entire left patella (kneecap) was removed. During this initial period, Mr. Herrin was in the hospital a total of 56 days from the date of the accident. Dr. Davis testified that the injuries, particularly to the left knee, were very painful.
On his discharge from the hospital, he remained in bed at home for 3 or 4 months, requiring a hydraulic chair lift to move. On April 3, 1967 he was returned to the hospital for further surgery because of arthritic complications in the left knee. The bones were surgically fused to reduce the pain on movement. Of course, the knee will be permanently stiff.
After these surgical procedures in April of 1967, Herrin was again bedridden for several months and then began to get about on crutches. Dr. Davis is of the opinion he has a 25% permanent loss of use of the left leg. In addition, the fracture of the left hip socket, the acetabulum, will probably cause arthritis to develop. Dr. Davis expressed the opinion that Mr. Herrin will not again be able to perform physical labor. There will be some future surgery necessary to remove some of the screws from the hip and, of course, there will be some future medical expense.
Under the circumstances, an award in general damages of $50,000 for pain, suffering, disability and loss of future income (discussed later in more detail) is appropriate. See Guy v. Kroger Company, 204 So.2d 790 (La.App., 2nd Cir. 1967) where the court awarded $40,000 to a 57 year old domestic worker for pain, suffering, disability and loss of wages resulting from a fracture of the neck of the femur, which required two operations and caused pain and permanent disability. In Cole v. Lumbermens Mutual Casualty Company, 160 So.2d 785 (La.App. 3rd Cir. 1964) we awarded $30,000 in general damages to a 16 year old boy whose left leg was ampu *179 tated about 4 inches below the knee, this award to include pain, suffering, disability and potential loss of earnings. In Birdwell v. Southern Farm Bureau Casualty Insurance Company, 160 So.2d 246 (La.App. 2nd Cir. 1964) an oilfield worker who sustained a permanent shortening and disability of his left leg, resulting in a total disability to do physical labor, was awarded $35,000 for pain, suffering, disability and loss of wages.
In the present case, Herrin’s injuries were more extensive, more surgery was required and the injuries were certainly just as painful and disabling as in the cases noted above.
Herrin has also proved a definite loss of income to the date of trial. He operated a dairy farm with about 85 milk cows on approximately 325 acres of land. He personally did most of the labor. After this accident he had to hire his son-in-law to operate the dairy. This began in December of 1966 at a starting wage of $100 per week, which was paid until September of 1967 for a total of about $3,600. Beginning in September of 1967 the salary was increased to $110 per week and that amount was still being paid at the time of the trial of this case in November of 1967. The amount paid during these last 2 months is $880. The total paid for extra help at the dairy is $4,480.
Of course, according to the expert medical testimony, Herrin will never be able to perform physical labor in his dairy again and he will have to continue to employ extra help. There is no way to estimate with exactness the loss in income which will result to plaintiff because of the necessity of hiring this labor. We have therefore included loss of future income in the award for general damages as set forth above.
Mr. Herrin proved medical expenses already incurred as follows:
1) Acme Ambulance Service - $ 102.25
2) Carnahan & Chadwick, Radiologists- 18.00
3) Snell’s, Limbs and Braces- 102.97
4) Physical Therapy Clinic- 15.00
5) First National Funeral Home, Ambulance Service- 10.00
6) Miller’s Rental Service, for hospital bed and trapeze bar- 32.64
7) Dr. Paul M. Davis_ 1,375.00
8) Hixson Bros., ambulance service- 64.50
9) Dr. Jack Cappel, Jr.- 211.00
10) Alexandria Anesthesia Service- 198.00
11) Baptist Hospital - 2,337.20
TOTAL_ $4,466.56
Dr. Paul M. Davis estimated that the surgical and other medical costs to remove the screws from plaintiff’s hip will be about $200. This appears to be the only item of future medical expense which is proved.
It was stipulated that the damages to Herrin’s truck amounted to $1,730. Of this amount Herrin’s insurer, Southern Farm Bureau Casualty Insurance Company, paid $1,630, and Mr. Herrin paid $100 deductible under the policy. Herrin is therefore entitled to $100 and his collision insurer is entitled to the remainder. (By virtue of a stipulation to this effect at page 205 of the transcript.)
*180 Summarizing, Mr. Herrin is entitled to damages as follows:
1) General damages for pain, suffering, disability and future loss of earnings- $50,000.00
2) Proven loss of income to the date of trial- 4,480.00
3) Medical expense- 4,466.56
4) Future medical expense- 200.00
5) Deductible portion paid under collision insurance policy- 100.00
TOTAL_ $59,246.56
For and on behalf of his collision insurer, Southern Farm Bureau Casualty Insurance Company, Herrin is entitled to judgment for the additional sum of $1,630, under the stipulation mentioned above.
The Department of Highways of the State of Louisiana has filed for the first time in this court, prior to submission of the case for decision, an exception of immunity from suit, stating that a similar exception was filed and sustained in the Perrys’ case, but through oversight and inadvertence none was filed in the Herrin case. Of course, the grounds for the exception is that, under the provisions of Article 3, Section 35 of the Consitution of the State of Louisiana, tort claims cannot be urged against the State or its agencies, of which the Department of Highways is one, without special authorization from the Legislature of Louisiana to file this suit. No such authorization was obtained.
Herrin contends initially that the exception of immunity was filed too late. This is a peremptory exception, seeking “to have the plaintiff’s action declared legally nonexistent, or barred by effect of law”, LSA-C.C.P. Article 923. The peremptory exception may be filed for the first time in the appellate court, “if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.” LSA-C.C.P. Article 2163. The peremptory exception was timely filed in this court and hence must be considered.
We would have no difficulty in sustaining the traditional immunity of the State except for the recent case of Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529 (1965). There our Supreme Court held that under the 1960 amendment to Article 3, Section 35 of the Constitution of Louisiana, the provision of the charter of the City of Shreveport authorizing it to “sue and be sued” consitutes a general waiver of the city’s immunity from suit. LSA-R.S. 48:22 (Act 4 of 1942) contains a similar provision empowering the Louisiana Department of Highways to “sue and be sued, implead, and be impleaded.” Hence, the issue is whether the holding in Hamilton is applicable to the Department of Highways.
Prior to the 1960 Constitutional Amendment, our Supreme Court had refused to construe the. “sue and be sued” provisions, of the charters and organic acts of state agencies, as a general waiver of immunity from suit. In Fouchaux v. Board of Commissioners of the Port of New Orleans, La.App., 186 So. 103 (1939) the court said: “The immunity exists unless it is especially waived by the state, and the general grant of such powers as corporations usually exercise should not be construed as a waiver of this immunity.” Again in Westwego Canal and Terminal Company v. Louisana Highway Commission, 200 La. 990, 9 So.2d 389 (1942) the court expressly held, on the identical issue in the present case:
“ ‘It has been held, and now appears to be well settled, that the provision in Act 95 of 1921, Ex.Sess., whereby the High *181 way Commission is declared to be a body corporate and that as such it may sue or be sued, does not authorize suits against the Commission for the recovery of damages ex delicto. Kilberg v. Louisiana Highway Commission, 8 La.App. 441; Orgeron et ux. v. Louisana Power & Light Co. et al., 19 La.App. 628, 140 So. 282, in which writs of certiorari and review were refused by this Court.’ ”
In 1959, two decisions of our Supreme Court, Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594 and Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793, held that legislative authorization to sue the State or one of its agencies, in an action ex delicto, constituted merely a waiver of immunity from suit and did not waive governmental immunity from liability. These holdings provoked considerable criticism.[1] Act 621 of 1960, to amend Article 3, Section 35 of the Constitution of Louisiana, was adopted by the Legislature to nullify the effect of the Duree and Stephens cases.[2]
The first case to reach our Supreme Court after the 1960 Constitutional Amendment was Hamilton v. City of Shreveport, supra. There, the plaintiffs sought judgment for damages to their respective properties, caused by the city raising the water level of Cross Lake in order to maintain an adequate water supply for the city’s water system. The city filed an exception of governmental immunity. The Court of Appeal held, 168 So.2d 380 (2nd Cir. 1964), that the maintenance of the water level of Cross Lake, to supply the city’s water system, is purely a governmental function, as distinguished from a proprietary function ; and that in such cases our cities have always been granted governmental immunity (see the many cases cited in the Court of Appeal decision). Our Supreme Court granted writs, limited “to the question of whether the City is immune from liability in view of Article 3, Section 35 of the Constitution, as amended pursuant to Act 621 of the Legislature of 1960 * * In its decision, our Supreme Court pointed out that the charter of the City of Shreveport empowered it to “sue and be sued” and held:
“A mere reading of Section 35, reported in full in footnote 2, will readily disclose that the Legislature is empowered to waive the immunity of the state and its political subdivisions from both suit and liability, and further specifically provides that ‘each’ authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes * * * as a waiver of the defendant’s immunity both from suit and from liability.’ See, Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104 and Pittman Construction Company v. Housing Authority of New Orleans, La.App., 169 So.2d 122. (Emphasis ours)
“(1, 2) From the foregoing, it is obvious that the argument of counsel for the defendant that the Legislature, in proposing the amendment at issue and the people in adopting it, only intended to waive the immunity of the state and its subdivisions from tort actions resulting from their proprietary activities and not to waive the traditional immunity of the state and its subdivisions in actions founded on the tortious conduct of its officers and employees when functioning in a governmental capacity, is clearly without merit * * * ”
The language used by our Supreme Court in the Hamilton case leaves us no alternative but to deny governmental im *182 munity in thé present matter. In Hamilton, the grounds of the plea of immunity was the previously well established rule that an action ex delicto does not lie against a municipality for an offense committed by its employees while engaged in the performance of a purely governmental function. The court held this well established rule has now been changed by the 1960 Constitutional Amendment which provides that “each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes * * * as a waiver of the defendant’s immunity both from suit and from liability.” As we understand the court’s decision, the “sue and be sued” provision in the charter or organic act of any state agency, whether adopted before or after the 1960 Constitutional Amendment, must now be construed as a general waiver of immunity from suit. This same interpretation of the Hamilton case was made by our brothers of the First Circuit in Lambert v. Austin Bridge Company, 189 So.2d 752 (La.App., 1st Cir. 1966), in which (unfortunately) an application for writ of certiorari to our Supreme Court was not considered, because not timely filed, 249 La. 768, 191 So.2d 143 (1966). A Federal Court has also reached this same conclusion in a case against the Highway Department, Belle Fontaine Towing Company v. Louisiana Department of Highways, 271 F.Supp. 60 (1967).
However, Klein v. Louisiana Department of Highways, 175 So.2d 454 (La.App., 4th Cir. 1965), writ refused 248 La. 369, 178 So.2d 658, may be in conflict. There the roof of plaintiff’s house collapsed as a result of piles being driven for the construction of a highway bridge ramp. Plaintiff obtained legislative authorization to sue the department for damages resulting from its “negligence”. However, plaintiff’s claim was not based on negligence but, instead, on LSA-C.C. Article 667, which imposes strict liability on a proprietor whose construction work causes damage to his neighbors’ property. The issue was whether the department could be sued under LSA-C.C. Article 667. The court discussed the effect of the “sue and be sued” provisions of LSA-R.S. 48:22 and held this did not constitute general authorization to sue the department under LSA-C.C. Article 667. The decision does not discuss the possible effect of the 1960 amendment to Article 3, Section 35, Louisiana Constitution. We make no attempt to distinguish the Klein case. Instead, we conclude we are bound by the Supreme Court cases relied upon.
Fortifying our conclusion is Southern Construction Company v. Housing Authority of the City of Opelousas, 189 So.2d 454 (La.App., 3rd Cir. 1966). There, the plaintiff sued the Housing Authority for the balance due on a building contract plus legal interest and court costs. In the absence of a special legislative act allowing interest or court costs to be assessed against this state agency, we followed the established jurisprudence denying such relief. We discussed the question of whether the 1960 amendment to Article 3, Section 35 of the Louisiana Constitution established a general waiver of immunity. We noted particularly the case of Pittman Construction Company v. Housing Authority of New Orleans, 169 So.2d 122 (La.App., 4th Cir. 1964) in which our brothers of the Fourth Circuit reached the contrary result that the 1960 amendment did provide a general waiver of immunity from liability for interest. In the Southern Construction Company case our Supreme Court granted writs, 250 La. 569, 197 So.2d 628- (1967), and answered these questions as follows:
“LSA-R.S. 40:474 specifically authorizes the Housing Authority to sue and be sued. Under Article III, Section 35 of the Louisiana Constitution, as amended in 1960, the authorization operates as a waiver of immunity from liability for interest and court costs. Pittman Const. Co. v. Housing Auth. of New Orleans, La.App., 169 So.2d 122, cert. denied 247 *183 La. 343, 170 So.2d 865. Plaintiff prayed for legal interest from judicial demand and court costs. The judgment should be amended to allow these items.”
In the present case the state argues persuasively that the Legislature did not intend the 1960 Constitutional Amendment to be a general waiver of immunity. The state quotes from the Report of the Committee on Law Reform of the Louisiana State Bar Association, which was forwarded to the Legislature at the time the 1960 amendment was considered. This report expressly states that the purpose of the 1960 amendment was to legislatively overrule the Duree and Stephens cases and concludes :
“While adoption of a general waiver of immunity in this State would be a progressive step, the Committee has concluded that this step should not be advocated at this time.
“Instead, the Committee proposes a constitutional amendment restoring the power of the Legislature to waive the immunity from liability as well as from suit; * * * ”
Unanimously the members of this court agree with the department that the Legislature did not intend the 1960 Constitutional Amendment to be a general waiver of immunity. As the state points out in its brief, the legislative intent is shown by the fact that since 1960 numerous special acts have been passed authorizing suits against state agencies whose charters and organic acts contain “sue and be sued” provisions. Furthermore, Act 285 of 1966 (LSA-R.S. 24:152) provides that in the future all of these special authorizations to sue be placed in one omnibus bill which can be adopted by resolution. Thus, the intention of the Legislature is shown by its own construction of the 1960 Constitutional Amendment.
The state also argues that, traditionally, cities, housing authorities and other governmental corporations, although admittedly state agencies, have been treated different from other state agencies on the question of immunity from suit. Hence, the state argues that Hamilton v. City of Shreveport, supra, is distinguishable and should not control in the present case against the Department of Highways. Our answer to this argument is that in the Hamilton case, as well as the Southern Construction Company case, the Supreme Court held traditional concepts of governmental immunity have now been changed by the 1960 Constitutional Amendment. The rationale of the court in the Hamilton case is the pre-existing “sue and be sued” provision, not any distinction between cities and other state agencies.
It is our conclusion we are bound by the Supreme Court decision in Hamilton v. City of Shreveport, supra, as followed in Southern Construction Company v. Housing Authority of the City of Opelousas, supra. Hence, the exception of immunity filed in this case in the appellate court is overruled.
Herrin’s claim against his own insurer, Southern Farm Bureau Casualty Insurance Company, under the uninsured motorists clause, is made only in the alternative and in the event no recovery can be had against the Department of Highways or its insurer. Hence, we do not reach a consideration of the problems which could arise under this alternative demand.
For the reasons assigned, the judgment appealed herein is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Willie Herrin, and against the defendants, David Perry, The Louisiana State Department of Highways, and Royal Indemnity Company, jointly and in solido, for the sum of $59,246.56, together with legal interest thereon from date of judicial demand until paid and all costs of these proceedings, the liability of Royal Indemnity Company being limited by its policy to $20,000.
*184 It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Willie Herrin, for and on behalf of Southern Farm Bureau Casualty Insurance Company and against the said defendants jointly and in solido, for the sum of $1,630, together with legal interest thereon from date of judicial demand until paid, this award also being subject to Royal Indemnity Company’s limitation of liability.
It is further ordered, adjudged and decreed that the exception of immunity from suit filed in this Court of Appeal by the State of Louisiana, Through the Department of Highways, is overruled.
All costs of this appeal are assessed against the defendants cast.
Reversed and rendered.
TATE, J., dissents and assigns written reasons.
HOOD, J., concurs in part, dissents in part and assigns written reasons.

. McMahon and Miller, The Crain Mythe —A Criticism Of The Duree and Stephens Cases, 20 Ra.Law Review, 449; Case Note, 34 Tul.Law Rev. 222.

. This observation is made in Hamilton v. City of Shreveport, supra.