228 So.2d 649

**Willie HERRIN**

v.

**David PERRY et al.**

**David PERRY et al.**

v.

**Willie HERRIN et al.**

Nos. 49579, 49589, 49580, 49597.

Nov. 10, 1969.

Rehearings Denied in Nos. 49579
and 49580 Dec. 15, 1969.

Concurring Opinion Dec. 19, 1969.

Norman L. Sissin, Robert J. Jones, R. Gray Sexton, Baton Rouge, for State of Louisiana through the Department of Highways, defendant-applicant.

Gold, Hall & Skye, Alexandria, for David Perry and Leurine B. Perry, plaintiffs-relators. William J. Guste, Jr., James M. Colomb, Jr., New Orleans, for Enas T. Lane, amicus curiae.

Stafford & Pitts, Alexandria, for Royal Indemnity Co.

Watson, Brittain & Murchison, Natchitoches, for Southern Farm Bureau Casualty Ins. Co., respondent.

Roy & Roy, by Chris J. Roy, Marksville, for Willie Herrin, plaintiff-applicant-appellee.

HAMLIN, Justice.

In these consolidated tort actions demanding damages for physical injuries and property loss resulting from a head-on collision between Willie Herrin's pick-up truck and a pick-up truck driven by Luerine B. Perry, we directed certiorari to the Court of Appeal, Third Circuit, for review of its judgments. Art. VII, Sec. 11, La.Const. of 1921; 215 So.2d 167; 215 So. 2d 177; 253 La. 304, 217 So.2d 407; 253 La. 305, 217 So.2d 407; 253 La. 306, 217 So.2d 408; 253 La. 307, 217 So.2d 408.

In the case of Perry v. Herrin, 215 So.2d 167, the Court of Appeal reversed and set aside the awards by the district court in favor of David Perry individually and in favor of Luerine B. Perry; their claims were dismissed. The Court reversed and dismissed the award of $1,500.00 in favor of David Perry on behalf of his minor child, Nadine Perry, as to Willie Herrin and Southern Farm Bureau Casualty Insurance Company but affirmed it as to defendant Royal Indemnity Company.[1]

---

1. Judge Tate dissented from the reversal of the trial court. Judge Hood agreed with the majority opinion, insofar as it held Willie Herrin free from negligence

In the case of Herrin v. Perry, 215 So. 2d 177, the Court of Appeal reversed and set aside the judgment of the trial court which had dismissed Willie Herrin's suit. It rendered judgment in favor of Willie Herrin and against David Perry, The Louisiana State Department of Highways, and Royal Indemnity Company, jointly and in solido, for the sum of $59,246.56, plus interest and costs, the liability of Royal Indemnity Company being limited by its policy to $20,000.00. The Court further rendered judgment in favor of Willie Herrin for and on behalf of Southern Farm Bureau Casualty Insurance Company and against the defendants supra, for the sum of $1,630.00, plus interest, the award being subject to Royal Indemnity Company's limitation of liability.[2]

The facts leading to the filing of plaintiffs' suits are correctly stated by the Court of Appeal as follows:

"The scene of the accident is on Louisiana Highway No. 457, also known as Latanier Road, a two-way, two-lane, blacktopped secondary road, running generally north and south through a rural farm area. The asphalt pavement is 20 feet wide with shoulders on each side of about 5 feet. For at least ¾ of a mile south of the scene, the road is straight, but immediately north of the scene it curves gradually to the west and there is a curve sign on the east shoulder about 500 feet south of the curve. The speed limit is 60 miles per hour.

"The accident occurred on March 14, 1966 at about 11:30 a. m. Rain had fallen earlier in the day and the pavement was wet, but it was only 'misty' at the time of the collision.

"A sign repair crew, 3 employees of the Department of Highways, had parked their truck, headed north, on the east side of the highway, about 6 feet north of the curve sign, which they intended to change to a larger size. A preponderance of the evidence shows that the left-hand wheels of the truck extended out into the northbound lane of traffic, partially obstructing it. A northbound vehicle had to go partially into the west lane of traffic to pass the truck.

"The plaintiff, Willie Herrin, is the only eyewitness to the collision. Mrs. Perry could remember nothing about the accident. The 3 Highway Department employees were in the cab of their truck. They heard Herrin pass and heard the collision, but their windshield was fogged and they saw nothing

and Luerine Perry not free of fault; he disagreed with the holding that the operators of the Highway truck were negligent.

2. Judge Tate dissented. Judge Hood concurred in part and dissented in part.

"Herrin's version of the accident is as follows: He had just left his dairy farm, located a short distance south of the scene of the accident, and was driving in a northerly direction at a speed of 40 to 45 miles per hour. He saw the Highway Department truck parked on the pavement about ¾ of a mile ahead. As he approached the truck, he slowed down and blew his horn as a precaution for any workmen who might be around the truck. Then he moved into the passing lane, observing for any oncoming traffic and for any workmen around the truck. When he had reached a point so close behind the parked truck that he was 'committed to pass' he saw the Perry vehicle coming around the curve ahead.

"Herrin says the Perry truck appeared to be 'coming pretty fast'. He accelerated, passed the Highway Department truck and returned to his own lane of travel. It appeared to Herrin that the Perry truck 'got faster' and, as Mrs. Perry left the curve, she angled into Herrin's lane of traffic and struck him there.

"The vehicles collided left front to left front. Neither truck moved far after the impact. Herrin's vehicle went off head first into the ditch on the east of the highway. The Perry vehicle spun counter clockwise and came to rest facing generally northeast in the west lane of traffic. [Luerine Perry, Nadine Perry, and Willie Herrin were seriously injured as a result of the accident.]

"* * *

"The crew testified they stopped here [main traveled part of the highway] to change the curve sign to a larger size. They did not park farther on the shoulder for fear of bogging down. They stayed in the parked truck for over 30 minutes because it was raining. Statements of other witnesses show that although it was 'misty', there was not enough rain for anyone else to stop working or even to use their windshield wipers. About 114 steps south of the place where the highway truck was parked, there was a driveway on each side of the road where the truck could easily have parked entirely off the highway." 215 So.2d 167, 169, 170.

Luerine B. Perry and her husband, David Perry, individually and on behalf of their 20 month old daughter, who was a passenger in the Perry vehicle at the time of the accident, filed suit for damages against Willie Herrin and his liability insurer, Southern Farm Bureau Casualty Insurance Company, and the State of Louisiana, through the Department of Highways, and its liability insurer, Royal Indemnity Company; Royal Indemnity Company's coverage is limited to $20,000 per person and $100,000 per accident.

In his suit for damages Willie Herrin named as defendants David Perry, State of Louisiana, through the Department of Highways, and Royal Indemnity Company. In the alternative, Herrin sought to recover from his own insurer, Southern Farm Bureau Casualty Insurance Company, under the uninsured motorists clause.

The State of Louisiana, through the Department of Highways, filed an exception of immunity from suit in the Perry case.[3] The trial court thereafter dismissed plaintiffs' suit as to the Department.[4] The Department of Highways inadvertently did not file an exception of immunity in the Herrin suit; it filed such an exception in the Court of Appeal, which overruled same. The judgments, supra, were rendered, and this Court granted certiorari on the applications of the State of Louisiana, through the Department of Highways, and Royal Indemnity Company (Royal Indemnity Company filed a separate application in the suit of David Perry et al. v. Willie Herrin et al.), Willie Herrin, and David Perry and Luerine B. Perry.

In this Court Royal Indemnity assigns the following errors to the judgments of the Court of Appeal:

1. The Court erred in not sustaining the plea of immunity urged on behalf of the State of Louisiana, through the Department of Highways.

2. The Court erred as a matter of law when it held, under its own fact findings as to the parking of the Highway truck, that this was negligence proximately causing the accident.

3. The Court erred in holding that plaintiff Herrin was not negligent in attempting to pass the Highway truck, said contention being based on the actual distances and measurements found by the Court of Appeal as bearing upon the provisions of the Highway Regulatory Act governing passing maneuvers. (LSA–R.S. 32:-75)

4. The Court erred in its reversal of the trial court on the question of Herrin's negligence, said reversal being violative of the manifest error rule, as evidenced by a three to two split of the five member court on this question.

The State of Louisiana, through the Department of Highways, contends that the

3. The Department of Highways averred that " * * * plaintiffs' suit, insofar as it is a suit against the Department of Highways of the State of Louisiana, has never been authorized by the Legislature of Louisiana, as is required by Article III, Section 35 of the Constitution of

Louisiana adopted in the year 1921, and therefore the Department of Highways is immune from suit by these plaintiffs and for this cause of action."

4. The Perrys did not urge in their appeal that the dismissal of the Department of Highways was error.

Court of Appeal erred in not maintaining the exception of sovereign immunity.

David Perry and Luerine B. Perry contend:

1. The majority of the Court of Appeal erred in finding that the point of impact between the Perry vehicle and the Herrin vehicle took place in the Herrin vehicle's lane.

2. The majority of the Court of Appeal erred in holding that Mrs. Perry was not approaching in plain view when Mr. Herrin began his passing maneuver.

3. The majority of the Court erred in failing to find that Mrs. Perry was faced with a sudden emergency not of her own making.

4. The Court erred in failing to increase the awards made in behalf of Nadine Perry and Luerine B. Perry.

Willie Herrin contends that the judgments of the Court of Appeal are correct, except insofar as quantum is concerned. He prays that the judgment in his favor be amended so as to award him $156,906.11 and affirmed in all other respects.

5. The trial court said: "Entirely aside from the questions of violation of the Highway Regulatory Act, or the Department's safety rules, this Court is convinced that it- was negligence for the Highway Department truck to have been left standing as it was, as the result was to create a trap or dangerous situation for other vehicles traveling on the

Southern Farm Casualty Insurance Company filed a brief in this Court, in which it prays that the court uphold the decision of the Court of Appeal in all of the cases before this Court.

A review of the records in these cases, a reading of the testimony, and a study of the exhibits offered in evidence convinces us that the Court of Appeal was correct in its finding that the Department of Highways' negligence was clearly a legal cause of the accident.[5] The liability of the Department will be disposed of infra after our determination of the negligence of Luerine B. Perry.

A reading of these records constrains us to conclude that the factual findings of the Court of Appeal and its analysis of the testimony are correct. There is no need for reiteration other than what we have quoted supra. We find that the accident occurred in Willie Herrin's lane of traffic.

"* * * the driver of an automobile involved in a collision in the wrong lane of traffic is presumed to have been negligent and bears the burden of establish-

highway. While it may be necessary at times for the work crews to park vehicles as this truck was parked, there appears to have been no justification for leaving this truck on the highway when no work was in progress or even about to commence according to the testimony of the crew members."

ing that he was without fault or that there were circumstances that justified his conduct. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Le Bourgeois v. Indiana Lumbermens Mutual Insurance Company, La.App. 1 Cir., 101 So.2d 720; Carhee v. Scott, La.App. 2 Cir., 104 So.2d 236; Breaux v. Valin, La.App. 3 Cir., 138 So.2d 405." Laughlin v. Allstate Insurance Company, La.App., 169 So.2d 396. See, Pittman v. Fowler, La.App., 191 So.2d 172; Moreau v. Transport Insurance Company, La.App., 203 So.2d 727, 251 La. 686, 205 So.2d 605.

Under the facts and circumstances of these cases and the law cited and quoted supra, we do not find that the Perrys sustained their burden of proof. They did not prove that Luerine B. Perry was free of fault, nor did they prove that she was faced with a sudden emergency at the time she veered her pick-up truck into Willie Herrin's lane of traffic and collided with his vehicle.

█  Because of our findings with respect to Luerine B. Perry and with respect to the negligence of the Department of Highways, we conclude, as did the Court

of Appeal, that Willie Herrin acted reasonably and in compliance with highway traffic regulations.[6]

LSA–R.S. 32:141, *Stopping, standing or parking outside business or residence districts, provides:*

"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.

" *   *   *" 

In West v. Kenknight, La.App., 193 So.2d 408, 410, the Court stated, "A violation of statutes relating to parking of vehicles upon the main traveled portion of a highway constitutes negligence, per se, but it is well recognized that such negligence is action-

6. "No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction." LSA–R.S. 32:75.

able only if it is the legal cause of the accident."

The evidence is replete to the effect that at the time of the accident the three employees of the Department of Highways were sitting in the cab of the Highway truck which had been parked there for approximately thirty minutes. No work was being performed by these employees, nor was any preparation being made to work. By their own testimony these employees state that "there had come a rain, misting rain and we was sitting in there waiting for it to stop."

In other words, they were taking a rain break. Under such facts and circumstances, it would have been practicable to have parked the truck elsewhere. Also under the facts and circumstances, the parked truck (even if its lights were blinking) constituted a hazard to highway safety. It is not necessary that we pass on what would have been practicable parking if the employees had been changing the sign at the time of the accident. It is also not necessary that we detail precautionary measures which should have been employed if work had been in progress.[7] We find that at the time of the accident, the Department of Highways' truck was illegally parked in violation of LSA–R.S. 32:141, supra. It was incumbent upon the driver of the truck to obey statutory laws of the highway; his instructions contained in the Safety Manual, Louisiana Department of Highways, (504) Drivers' Responsibility, (b) p. 40, recite: "He is considered by the public to be a representative of the Department and *is not only expected to abide by the laws of the highway,* but is supposed to set an example for others by his good driving and road courtesy." (Emphasis ours.) The violation constituted negligence and such negligence was the legal cause of the accident.

▬ We now approach a very important issue in this matter, namely, the alleged sovereign immunity of the Department of Highways.

LSA–R.S. 48:13 provides: "The department of highways is hereby declared to be and continued as a body politic and corporate by that title. The department of highways shall function under the control, management, supervision and direction of the board of highways in the manner provided by Article VI, Section 19.1 of the Constitution." LSA–R.S. 48:22 provides: "The department has all of the rights, powers, and immunities incident to corporations. It may acquire, own, administer, alienate, and otherwise dispose of all kinds of property, movable and immovable, tangi-

---

7. The Safety Manual of the Department of Highways, submitted in evidence, contains detailed rules and regulations with respect to warnings, lights, barricades, distance, flags, etc. See, Safety Manual, Louisiana Department of Highways, pp. 108–121.

ble and intangible; contract; adopt, alter, or destroy an official seal; *sue and be sued, implead, and be impleaded.*" [8] (Emphasis ours.)

Art. III, Sec. 35, La.Const. of 1921, as amended by Act 621 of 1960, adopted November 8, 1960, provides:

"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. * * * In the case of any such claim on which suit heretofore has been authorized by the Legislature, and the suit was dismissed on the ground that the defendant's immunity from liability had not been waived, another suit on the same claim may be filed at any time prior to January 1, 1962, and such suit shall not be subject to the defense of res judicata based on the dismissal of the prior suit on such claim."

In brief the Department of Highways contends:

"The Legislature *never* intended that the constitutional amendment would cause all prior acts creating *State* governmental agencies and giving them the authority 'to sue and be sued' to be considered as

---

8. "The commission, in our opinion, is a distinct legal entity from the state. Section 3 of Act No. 95 of 1921 (Ex.Sess.) makes it a body corporate, with power as such to sue and be sued. It is an agency of the state, and not the state itself, created for the purpose of executing certain duties, devolving primarily upon the state. In a general sense, in its relations to the state, it is not dissimilar to levee districts, which are bodies corporate, created for the purpose of constructing and maintaining levees, which are duties, devolving primarily upon the state. * * *" Saint v. Allen, 172 La. 350, 134 So. 246, 249. See, Jones v. Employers Liability Assurance Corp., La. App., 182 So.2d 534; Kallenberg v. Klause, La.App., 162 So.2d 73, 246 La. 356, 164 So.2d 354.

waivers of immunity from tort liability. It was not so intended by the drafters of the amendment nor by the Legislature. To say otherwise is to read into the statute something that simply is not there.

" * * *

"This lack of Legislature intent—at least insofar as the Department of Highways is concerned—is demonstrated in an overwhelmingly convincing fashion by the fact that since the passage of the constitutional amendment, the Legislature has nonetheless seen fit to grant legislatively and on a case by case basis a waiver of immunity and renunciation of prescription in no less that 350 instances! It is difficult to imagine how the Legislature could have intended the amendment to be a general waiver of immunity, and then go to the effort and expense of granting 350 special waivers. Moreover, the passage of Act 285 of 1966 (now LSA–R.S. 24:152) is a manifestation of the fact that the legislature could not and did not intend the constitutional amendment to be a general waiver of immunity. Act 285 of 1966—*passed almost six years after the constitutional amendment*—provides that in the future, suit authorizations (i. e., waivers of immunity) be handled by omnibus bills and resolutions, in lieu of the rather awkward fashion in which they were theretofore being handled. The act gives certain examples of form, and the very first is:

"John Doe is hereby authorized to file suit *against the State of Louisiana, through the Department of Highways* * * * (Emphasis added.)

"What could have prompted the Legislature to pass Act 285 of 1966 if it had intended a constitutional amendment passed six years earlier to be a general waiver of immunity? It is respectfully submitted that the Legislature did not intend the amendment to Article 3, Section 35 of the Constitution to be a general waiver of immunity from tort suits against the State of Louisiana, through the Department of Highways."

We find no merit in the above contention. In Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529, we observed that the above constitutional amendment nullified the decisions of Duree v. Maryland Casualty Co., 238 La. 166, 114 So. 2d 594, and Stephens v. Natchitoches School Board, 238 La. 388, 115 So.2d 793, holding that whenever the Legislature authorized suit under Section 35 of Article III of the Constitution of 1921, as amended pursuant to Act No. 385 of 1946, it simply waived the traditional immunity of the state and its subdivisions from suit and such authorization did not constitute a waiver of the state or its agencies from liability for the negligence of one of its employees in the exercise of a governmental function. In the Hamilton case, we held that under the 1960 Constitutional Amendment a plea of govern-

mental immunity urged by the City of Shreveport could not be maintained. We now hold that our ruling in the Hamilton case applies to the plea of governmental immunity urged by the Department of Highways. We further hold that the "sue and be sued" provision in the charter or organic act of any body enumerated in the 1960 Constitutional Amendment must be construed as a general waiver of immunity from suit. See, Lambert v. Austin Bridge Company, La.App., 189 So.2d 752. Cf. Belle Fontaine Tow. Co. v. Department of Highways, State of Louisiana, D.C., 271 F.Supp. 60.

▆ We find that Act 285 of 1966, LSA–R.S. 24:152, *Suits against state or political subdivision; omnibus bill or resolution; form,* has no effect on the instant plea of governmental immunity. In Pierce v. Fidelity and Casualty Co. of New York, 205 So.2d 831, this Act was correctly explained as follows:

"It is our opinion that the omnibus bill, R.S. 24:152 serves a two-fold purpose: It is designed to apply (1) to those special agencies enumerated in Section 26 of Article 19 which have not been restored to their original legal status of corporate entitles subject to suit, and (2) cases in which attorneys, out of an abundance of caution, seek to obtain legislative authorization as they have done in the past when filing suit against the state or its political subdivisions."

We conclude that the Court of Appeal was correct in overruling the exception of immunity from suit filed by the State of Louisiana, through the Department of Highways.

▆ A study of the record reflects that the Court of Appeals did not abuse its discretion in its award to Willie Herrin. Its opinion, 215 So.2d 177, 179, discloses that it considered all factors of damages and that the award of $59,246.56 was arrived at after serious deliberation. We find the award just and compensable.

For the reasons assigned, the judgments of the Court of Appeal, Third Circuit, in David Perry et al. v. Willie Herrin et al., and in Willie Herrin v. David Perry et al., are affirmed. All costs of this Court in David Perry et al. v. Willie Herrin et al. to be assessed equally against David Perry and Royal Indemnity Company; all costs of this Court in Willie Herrin v. David Perry, et al. to be paid by Royal Indemnity Company.

McCALEB, J., dissents, being in accord with the views expressed by the district judge and those of Judge Tate of the Court of Appeal. See La.App., 215 So.2d page 174.

FOURNET, Chief Justice (dissenting).

According to the facts of this case I cannot agree with the majority view that the Department of Highways is liable for

the damages resulting from the collision between the Herrin and Perry vehicles.

These facts as found by the court of appeal and adopted in extenso by the majority and insofar as pertinent for a decision may be succintly stated. The accident occured about 11:30 a. m. during misty weather, the earlier rain having ceased on the blacktopped Louisiana Highway No. 457, running generally north and south through a rural farm area; and for at least ¾ of a mile south of the scene of the accident the road is straight but immediately north thereof it curves gradually to the west. About 596 feet south of the curve the Department of Highways had placed a sign warning of the curve so a motorist could regulate his speed in order to safely negotiate the curve, and was being replaced with a larger sign by three employees of the Department who, in order to accomplish this, had parked their truck headed north on the east side of the highway with the back thereof, from which they had to work, as near the sign as practical without bogging down, necessarily leaving the left hand wheels of the truck extended out a few feet into the northbound lane of traffic. At the time Herrin, who was driving in a

northerly direction in the 60 mile zone about .40 to 45 miles per hour, saw the truck parked on the pavement about ¾ of a mile ahead; thereupon, as a precaution for any workmen who might be around the truck, he reduced his speed and blew his horn as he moved into the passing lane; and upon reaching a point so close behind the truck that he was "committed to pass" he saw the Perry vehicle "coming pretty fast" around the curve ahead. Herrin then accelerated his speed, passing the truck safely and returned to his lane of travel, (thus fully complying with L.R.S. 32:75),[1] when he noticed Mrs. Perry, who was driving, upon negotiating the curve angled at an accelerated speed into his (Herrin's) lane of traffic, colliding with his truck, the left front of her truck striking the left of his at a point 142 feet north of the curve sign.

Under these facts I fully agree with the majority view that the Perrys did not sustain the burden of proof that was their's, that they were free of fault, nor "did they prove that she (Mrs. Perry) was faced with a sudden emergency at the time she veered her pick-up truck into Willie Herrin's lane of traffic and collided with his

1. No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction unless such left side in clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operating of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction."

vehicle." But I cannot agree with the majority that just because the truck was parked on the highway that the Department of Highways was liable because the truck was "illegally parked in violation of LSA–R.S. 32:141", reasoning that it was "incumbent upon the driver to obey the statutory laws of the highway," and "to set an example for others by his good driving and road courtesy." This holding is not only in direct contravention of the very authority relied upon by the majority, West v. Kenknight, La.App., 193 So.2d 408, from which they quote, "A violation of statutes relating to parking vehicles upon the main traveled portion of a highway constitutes negligence, per se, *but it is well recognized that such negligence is actionable only if it is the legal cause of the accident*," but they overlook that from the very language of the statute itself, R.S. 32:141,[2] it does not prohibit the parking of a truck on the highway under the conditions hereinabove stated. The statute only prohibits the parking on the paved portion of the highway "when it is practicable to stop, park or so leave such vehicle off such part of said highway." That the legislature in adopting the statute contemplated that

some vehicles because of necessity may be parked on the paved portion of the highway, is evidenced by the fact that they further provided therein, *"but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway."* (Emphasis added.)

In my opinion the truck was not illegally parked. It was being used by the Highway Department in the performance of its duty to provide for the safety of the public by replacing the existing sign with a larger and more efficient warning sign. The truck being used for that purpose was necessarily parked at the place in question in order for the crew to be able to work from the rear of the truck as the job required and was parked as far off the paved portion of the highway as practical without bogging down in the ditch. Thus, the truck was parked in strict conformity with the statute. All the parties concede Herrin and Mrs. Perry saw or should have seen the highway truck parked on the side of the road for a distance exceeding the 200 feet

2. "A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unob-

structed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway."

in each direction required by law. Herrin, the only eyewitness to testify, Mrs. Perry having no recollection of what transpired, stated that he saw the highway truck at least ¾ of a mile before he reached it.

For these reasons, I respectfully dissent.

BARHAM, Justice (dissenting)

I join in the dissent of the Chief Justice, and dissent for the further reason that even if there were negligence in the parking of the Highway Department truck, under the facts recited by the majority I find no causal connection between such negligence and the accident.

The majority has found that Mr. Herrin had passed the department's truck and was back in his proper lane of traffic before the collision; that Mrs. Perry was faced with no sudden emergency and was at fault in swerving into the wrong lane; and that the Highway Department was negligent in having parked its truck partially on the road. The majority held the negligence of the Highway Department a legal cause of the accident without explaining the causal connection between the parking of the department truck and the accident.

I conclude that the plaintiffs, who bear the burden of proof, have failed to establish legal causation between any act of the employees of the Highway Department in the operation of its vehicle and the collision. Indeed, Mr. Herrin, the plaintiff who has recovered damages, by his own testimony, which the majority accepts, actually exonerates the Highway Department. The majority finds that Mr. Herrin had returned to his lane of traffic when more than 100 feet separated the Herrin and Perry vehicles. The only other evidence besides his testimony relates to physical findings such as distances between certain points on the highway, the location of some of the vehicles, and the point of impact, all of which are matters requiring conjecture and interpretation. The Highway Department caused no deviation from reasonable care by Herrin and did not create a sudden emergency for Mrs. Perry. What causal relation could there possibly have been between its parking and the accident?

For these reasons I respectfully dissent.

SUMMERS, Justice (concurring in part and dissenting in part).

In my view Luerine B. Perry and her husband, David Perry, individually and on behalf of their twenty month old daughter, Nadine Perry, should recover against the Department of Highways and its liability insurer.

The employees of the Department of Highways were negligent in parking the truck too near the curve and in partially obstructing the eastern lane of travel. In doing so they created a hazardous condition,

and when the Herrin and Perry vehicles came upon the scene Mrs. Perry was confronted with a sudden emergency, and her actions were not negligent.

Under the doctrine of sudden emergency, one who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently, and upon reflection, may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence. Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355 (1961).

Rehearings denied in Nos. 49579 and 49580.

FOURNET, C. J., and McCALEB and BARHAM, JJ., are of the opinion a rehearing should be granted.

SANDERS, J., concurs in the denial of a rehearing and assigns written reasons.

SANDERS, Justice (concurring in denial of rehearing).

The only application for a rehearing was that of the Department of Highways and its insurer. I subscribe to the denial of a rehearing.

I am convinced the Highway Department employees were guilty of negligence in parking their truck on the highway during the rain break, when it was practicable to eliminate the traffic hazard by parking the truck elsewhere. The employees' conduct violates both the Highway Regulatory Act (LSA–R.S. 32:141) and the rules of the Department itself.

The circumstances of the collision are difficult to reconstruct. I am convinced, however, that the obstruction of the highway created a sudden emergency when the approaching driver, after coming around the curve, was confronted with the passing vehicle. The collision resulted. Hence, I am of the opinion that the Court properly held the Highway Department and its insurer.