309 So.2d 357 (1975)
Frances JOHNSON et al., Plaintiffs-Appellants,
v.
The TRAVELERS INDEMNITY COMPANY et al., Defendants-Appellees.
No. 12535.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1975.
Rehearing Denied April 1, 1975.
Writ Refused June 13, 1975.
Morelock, Egan & Cook by Reuben W. Egan, Shreveport, for Frances Johnson, Mrs. Bertha Ladeau, and Mrs. Alma Anderson, plaintiffs-appellants.
Blanchard, Walker, O'Quin & Roberts by Wilton H. Williams, Jr., for Jasper R. Mann, SAIA Motor Freight Line, Inc., and The Travelers Indemnity Company, defendants-appellees.
Chaffe, McCall, Phillips, Toler & Sarpy by Jarrell E. Godfrey, Jr., for Louisiana State Board of Registration for Professional Engineers and Land Surveyors, amicus curiae.
Before AYRES, PRICE and HALL, JJ.
En Banc. Rehearing Denied April 1, 1975.
AYRES, Judge.
This action in tort arises out of a motor vehicle collision which occurred after darkness had set in, at about 7:15 p. m., on February 17, 1972, on Louisiana Highway No. 1 in Red River Parish at a point approximately 26 miles south of Shreveport. Involved were a 1966 model Plymouth four-door sedan, owned and, at that time, driven by Maybeth Johnson, and a 1970 model International tractor-trailer unit owned by SAIA Motor Freight Line, Inc., driven by its employee Jasper R. Mann. Occupants of the automobile at the time of the accident in addition to the driver were Mrs. Bertha Ladeau and Mrs. Alma Anderson, guest passengers. Miss Johnson died of injuries sustained in the accident. Her guest passengers sustained severe and painful injuries.
Plaintiff, in addition to the guest passengers, Mrs. Ladeau and Mrs. Anderson, is Frances Johnson, sister and sole heir of the deceased. Made a defendant along with Mann and SAIA Motor Freight Line, Inc., was the latter's insurer, The Travelers Indemnity Company.
Plaintiff Frances Johnson sought by this action to recover damages allegedly sustained through the accidental death of her sister from causes allegedly produced by *358 and arising out of the accident. Mrs. Ladeau and Mrs. Anderson each sought to be compensated for damages and injuries which they had sustained.
This cause was tried before a jury. On a finding indicative that plaintiffs had not borne their burden of proof of establishing fault on the part of defendant's truck driver to a legal certainty and by a reasonable preponderance of the evidence, a verdict was rendered in favor of the defendants. In approving the verdict the trial court accordingly rejected plaintiffs' demands. Plaintiffs thereafter appealed.
The highway on which the accident occurred, a two-lane, asphalt-surfaced roadway marked with solid white lines along the outer edge of each lane and appropriate center lines, is a principal north-south thoroughfare. At the scene of the accident and for a considerable distance both north and south thereof the highway is straight and level, but the roadway and shoulders were wet as the result of a recent rain.
Plaintiffs contend the accident, a headon collision between their automobile and defendant's tractor-trailer unit, occurred in plaintiffs' northbound traffic lane; whereas defendants contend that the two vehicles collided in the approximate center of the truck's southbound traffic lane when the automobile, only a short distance away, suddenly swerved to the left across the center line of the highway and struck the left side of defendant's unit.
A crucial and decisive fact is in whose traffic lane the collision occurred. In giving consideration to the evidence contained in the record pertinent to this question, we must bear in mind who has the burden of proof. It is an elementary principle of law, so universally recognized that citation of authorities would be superfluous, that the burden of proof in civil actions, such as this, is upon the plaintiff to establish by a reasonable preponderance of the evidence and to a legal certainty every fact essential to his recovery. An apparent exception to this rule exists in instances where a motor vehicle collision occurs in a motorist's wrong lane of travel. In such instances there appears to be a presumption of fault on the part of the motorist where the accident occurs out of his proper lane of travel and in the lane of the other motorist. Therefore, where the accident is shown to have occurred in a motorist's wrong lane, the burden is upon that motorist to establish his freedom from fault. It is then his burden to exculpate himself from negligence.
In this connection, we had occasion in Stewart v. Bixler, 222 So.2d 653, 654 (La. App., 2d Cir., 1969), to state:
"A well recognized rule is that where a collision occurs between two motor vehicles in one of two traffic lanes there is a presumption that the driver of the vehicle determined to have been in the wrong lane was negligent; and he has the burden of establishing that the collision was not caused by his negligence or that there was [sic] justifiable circumstances excusing his conduct. Kirkham v. Travelers Insurance Company, La. App., 192 So.2d 630 (2nd Cir. 1966) and those cases cited as authority therein. See also Holden v. Speights, La.App., 166 So.2d 11 (3rd Cir. 1964)."
See, also:
Freeman v. Continental Casualty Company, 180 So.2d 112 (La.App., 2d Cir. 1965);
Perry v. Herrin, 215 So.2d 167, 171 (La. App., 3d Cir., 1968writs granted on grounds not pertinent here). But see 254 La. 933, 228 So.2d 649, 653 (1969) and the cases therein cited.
Despite the many conflicting contentions and secondary issues, and the taking of testimony with respect to which consumed 10 days of a 12-day trial, a determination of the question of liability adversely to plaintiffs would be decisive of this entire matter. Therefore, a discussion or determination of all such other issues will await *359 or be pretermitted altogether until, or dependent upon, the conclusion reached on this primary question.
The only remaining eyewitnesses to the accident were Jasper Mann, the tractor driver, Mrs. Bertha Ladeau, and Mrs. Alma Anderson, passengers in the Plymouth automobile. Their testimony with respect to the manner in which the accident occurred is conflicting.
Plaintiffs alleged, with reference to the collision, that the point of impact was actually in the southbound traffic lane, which was the proper lane of travel for defendant's truck and trailer. Nevertheless, Mrs. Ladeau and Mrs. Anderson testified that the accident occurred in the northbound traffic lane, the proper lane of travel for the Plymouth automobile. In connection with the testimony of these witnesses of plaintiffs, it may be pointed out that it was only momentarily before the occurrence that they claimed to have seen the truck in their lane of travel. One of these witnesses occupied the rear seat of the Plymouth and the other the front seat to the right of the driver.
The record reveals that the three women were returning to their homes in Tyler, Texas, from a visit or vacation in Florida. On the day of the accident and on the preceding day, they had driven a total of approximately 1,000 miles. Their travel on the day of the accident was continuous except for two or three stops for gas and for a period of 40 or 45 minutes for their night meal in Alexandria. Upon resuming their travel, Maybeth Johnson took over as driver of her car. At the time of the accident she had driven about 100 miles during which she encountered a period of rain and wind. Although at the time of the accident the downpour of rain had ceased, the asphalt roadway was wet and slippery.
Jasper Mann, the truck driver, testified that he observed the Johnson vehicle from a distance of approximately a mile away, followed by another vehicle which, from its lights, appeared to be a truck-trailer unit. The car appeared, so he testified, to have been proceeding in a normal manner until within an estimated distance of 50 to 60 feet it took a sudden angling direction across the center line of the highway into the truck's southbound lane and struck the left side of defendant's unit.
Mann was an experienced truck and bus driver. His tenure of service as such a driver approximated 20 years or more. He had driven buses for Continental Trailways Bus System and heavy trucks for a period of 15 years or more. These trucks were similar in character to the one involved in the aforementioned accident. At the beginning of his journey from his employer's freight yard in Shreveport to New Orleans about 6:20 p. m., he had a load estimated at 20,000 pounds, about one-half of the unit's capacity. After departing, he never stopped before reaching the scene of the accident except possibly for stoplights. He estimated his speed at 50 miles per hour and testified that his motor was equipped with a governor restricting its speed to a maximum of 58 to 60 miles per hour. He further testified that he was driving, as was his custom, very near his right-hand edge of the asphalt roadway surface; that at no time was his truck or trailer outside his proper southbound lane; that when the Plymouth started toward his traffic lane he immediately maneuvered his vehicle to the right shoulder, and that the right wheels of his tractor had left the paved portion of the highway and had run onto the shoulder at the time the vehicles collided. Thereafter the tractor continued at an angle into and across a ditch on the west side of the highway and turned over when it reached a railroad embankment. The driver explained there was little time for reaction or maneuver to prevent the accident, but that, nevertheless, he had attempted to avoid the accident by steering his vehicle to the right and eventually off the roadway.
Mann's version as to the manner of the occurrence and the position taken by his truck and trailer was substantiated by the *360 findings of three State police officers who cooperated in investigating the accident and by the findings of an insurance investigator who made an examination at the scene shortly after the occurrence.
Sergeant Harold Porter of the State police department, who had been parked at Caspiana checking vehicular speeds, was the first officer to arrive at the scene. Porter testified that the road at the scene was wet and the shoulders were muddy. The Plymouth was on the east side of the highway with its front projecting into the northbound traffic lane of the highway, headed in a northwesterly direction. The truck-and-trailer unit was found farther to the south, turned over in the ditch on the west side of the highway. Porter further testified that he talked with one of the women who identified herself as the driver of the Plymouth. He was told that she could not remember how or why the accident happened. He also interviewed the truck driver who, so the witness testified, advised him that the car had angled across the center line of the highway into his lane, whereupon he started to move his truck over onto the shoulder, but the vehicles nevertheless collided in his lane of traffic; after the impact his truck continued down the shoulder into the ditch and overturned on its left side. An examination of the highway revealed to him gouge marks in the approximate center of the southbound traffic lane, marking the point of impact. From that point, drag marks extended to the place where the Plymouth was brought to rest on the east shoulder of the road. His visual examination of the highway for a distance of 50 to 100 feet, both north and south of the gouge marks, disclosed no tire or skid marks on the pavement within that area. He followed the truck's tire marks from the point of impact down the shoulder to where the unit came to rest.
L. S. Huckabay, III, a detective with the Louisiana State Police, with many years' experience as a state trooper in investigating motor-vehicle accidents, arrived at the scene a few minutes after the arrival of Sergeant Porter and took over the investigation inasmuch as the accident had occurred within his jurisdiction in Red River Parish. His investigation disclosed the gouge marks in the southbound traffic lane but no skid marks on the pavement within a distance of approximately 60 feet to the north and to the south of the gouge marks identified as the point of impact. His finding was that the right wheels of the truck left the roadway at an estimated distance of 35 feet north of the point of impact. Huckabay followed the course taken by the truck and trailer down the embankment into and across the ditch and observed that the unit "clipped" a telephone pole.
Also sent to the scene of the accident was Sergeant Jack Dysart of the State police, a Troop G safety officer, to make an investigation into the manner of the occurrence and to make photographs of scenes bearing on the cause of the accident. He also observed the gouge marks in the southbound traffic lane and determined that these marks represented the point of impact. He too traced the course of the truck and trailer from the roadway surface down the shoulder and into the ditch where the unit overturned. A tracing was made of the truck's tracks from the north past the area where the gouge marks were found in the southbound lane. Those tracks were first found on the shoulder at a point exceeding a distance of 20 feet north of the gouge marks.
With respect to purported tandem-wheel skid marks in the northbound traffic lane, testified to have been 23 × 73 inches, Dysart testified that such marks could not possibly have been made by Mann's truck or trailer. There is testimony in the record to the effect that these and other marks in the northbound traffic lane could have been caused by other traffic and particularly the wrecker that was turned and maneuvered into position in order to be attached to the automobile.
*361 Lee Beaubouef, an insurance adjuster with 20 years' experience in investigating automobile accidents, was sent to the scene by defendant SAIA Motor Freight Line, Inc., shortly after the accident occurred to make an investigation. His examination extended to both north- and southbound traffic lanes for a distance of 30 to 40 feet in both directions from the gouge marks found in the southbound traffic lane. He found no skid marks in either traffic lane. His findings coincided with those of the police officers with respect to the gouge marks and the point where the tractor began leaving tire marks on the shoulder of the road, which he estimated began 20 feet north of the gouge marks. Judging by the course taken by the truck down the shoulder and into the ditch, this witness testified that it would have been impossible for the truck or trailer to have made skid marks in the northbound traffic lane.
The testimony of the three police officers and of the insurance investigator and adjuster corroborate defendant Mann's testimony and support his version of how the accident occurred. This testimony of witnesses who were on the scene soon after the accident occurred outweighs the testimony of subsequent viewers of the scene and their surmises and conjectures as to how the accident could possibly have occurred.
Plaintiffs rely heavily upon the testimony of Prof. Joseph H. Barnwell, a mechanical and electrical engineer with a B.S. degree from Georgia Tech and M.S. degrees in mechanical engineering from the University of Tennessee and Texas A. & M. Further courses pursued by him included studies with respect to stress analysis and engineering graphicsstress analysis at Massachusetts Institute of Technology and at Auburn University. He is licensed in this State as a mechanical engineer, and is a professor of mechanical engineering at Louisiana Tech. He was, on the trial of this cause, recognized as an accident analyst with considerable experience.
Professor Barnwell visited the scene of the accident some nine days following its occurrence. From his inspection and examinations at the scene and the findings made by him, he concluded that prior to the impact of the collision defendant's truck unit was traveling in its left, or wrong, lane of traffic and that the collision occurred in plaintiffs' northbound traffic lane. This testimony is, however, diametrically opposed to that of defendant Mann and to that of the State Police investigating officers who viewed the scene soon after the accident occurred.
The professor's qualifications and his honesty and sincerity in the giving of his testimony are unquestioned, but in giving his testimony effect and weighing it along with the testimony offered by the defendants, the conclusion, to us, is inescapable that plaintiffs have not sustained their burden of proof and established negligence on the part of defendant's driver by a reasonable preponderance of the evidence and to that degree of legal certainty required by law.
In thus reviewing the record and considering all of the evidence, as we are charged under the law to do, and in arriving at the conclusion that plaintiffs have failed to establish fault on the part of defendant's driver, it appears unnecessary to consider or discuss the other contentions presented in this cause.
For the reasons assigned, the judgment appealed is affirmed at plaintiffs-appellants' costs.
Affirmed.